[No. 20340.   Department Two. — December 23, 1887.]

THE PEOPLE, RESPONDENT, *v.* CHING HING CHANG ET AL., APPELLANTS.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE. — A new trial will not be granted on the ground of newly discovered evidence, if the evidence might have been discovered by reasonable diligence in time to have been produced at the trial.

CRIMINAL LAW — ROBBERY — EVIDENCE. — On a trial for robbery, the complaining witness, after testifying that he had, on the day of the robbery, collected the money, of which he was robbed, from a relative with whom he had deposited it, was asked, on cross-examination, whether his relative had procured it from a safe or a trunk. *Held,* that the question was immaterial and was properly excluded.

ID. — IMPEACHMENT OF WITNESS — CONTRADICTORY WRITTEN STATEMENTS —
PRELIMINARY EXAMINATION.— On such a trial, a witness cannot be im-
peached by showing that he had made statements on the preliminary
examination inconsistent with his statements on the trial, unless his
testimony given on the preliminary examination, if reduced to writing,
be first shown to him. And in the absence of any evidence to the con-
trary, it will be presumed that the testimony given on the preliminary
examination was in writing.

ID. — WITNESS NOT ABLE TO READ — UNKNOWN LANGUAGE.— When the
witness sought to be impeached by his prior written statements cannot
read, or where the writing is in a language to him unknown, he is en-
titled to have it read to him before it can be used for the purpose of im-
peachment.

ID. — CROSS-EXAMINATION — IMMATERIAL ERROR.— On the cross-examination
of the prosecuting witness, after he had detailed the circumstances im-
mediately preceding and attending the robbery, he was asked whether,
at the time of the robbery, he had suspected that the defendants had
any intention of robbing him. The court excluded the question. *Held*,
that while the question should have been allowed, its exclusion, under
the circumstances of the case, was without prejudice to the defendants,
and did not warrant a reversal.

ID. — REQUEST TO ASCERTAIN FACT — REFUSAL NOT REVIEWABLE.— The re-
fusal of the trial court to request a witness during recess to ascertain a
fact necessary to enable him to answer a question is not reviewable on
appeal.

ID. — INSTRUCTIONS — CREDIBILITY OF EVIDENCE.— In its instructions, the
court charged the jury, in reference to the evidence of certain witnesses,
as follows: "You should carefully determine the amount of credibility
to which their evidence is entitled. If convincing and carrying with it
a belief in its truth, act upon it; if not, you have a right to reject it."
*Held*, that the instruction was proper.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
refusing a new trial.

The facts are stated in the opinion of the court.

*Davis Louderback*, for Appellants.

*Attorney-General Johnson*, for Respondent.

THORNTON, J. — Information accusing defendants of
robbery. The newly discovered evidence is of a charac-
ter that might have been discovered by reasonable dili-
gence in time to have produced it at the trial. It need

not therefore be further considered. In the progress of the trial several exceptions were reserved to the rulings of the court, which it will be necessary to pass on.

1. Chin Len, the complainant, was called as a witness, and testified that he had collected the money, of which he testified he was robbed, from a relative of his named Kee, on Pacific Street, where Kee kept a wash-house; and that at the time of the trial this relative had gone to China. The money was collected of Kee on the day of the robbery, with whom he (the witness) had deposited it. In the course of the cross-examination, the defendant's counsel (Mr. Smith) asked the witness where his relative procured the money to pay him, when there occurred what follows: " The Court: That is proper, if you know where. Mr. Smith: Do you know where your relative procured the money to pay you? Mr. Coffey: I object to the question as irrelevant, immaterial, and incompetent. Witness: I think he went to his safe or trunk. Mr. Smith: Did he,— safe or trunk? The Court: It is immaterial. Mr. Smith: The object is to show the improbability of his leaving the money there on deposit unless there was some safe place in the wash-house for it,— that is the object of the testimony." The prosecuting officer (Coffey) objected as before, and the court sustained the objection.

So far as relates to the issue of robbery which took place, according to the testimony, at 836 Washington Street, it was entirely immaterial whether the money was taken by Kee when he paid it to witness from a safe or trunk. If counsel desired to show that a trunk or safe was not a safe place of deposit, the inquiry for that purpose would naturally turn on the character of the safe or trunk,— what kind of safe or what kind of trunk it was of which he spoke,—and what were the means of fastening the safe or trunk referred to, so as to keep outsiders from getting into it. But no question of this kind was asked. The only question, as indicated by the curt

language used, was whether the money was taken from a safe or trunk when handed by Kee to the witness. This had no reference to the fact whether the safe or trunk was a safe place of deposit. If the object of counsel was to show such a fact, he should have asked a question appropriate to the purpose. The court might well have concluded from the statement of counsel that if his object was to show that the safe or trunk was not a safe place to deposit money, that the answer to the question put had no tendency to show it. It is clear that if the witness had answered that the money was taken from a safe, and not from a trunk, this would have shown nothing as to its being a place where money could have been safely deposited. The same would be true if he had answered that the money was taken from a trunk, and not from a safe. An apposite question might have been put for the object declared by counsel, and as none was put, we cannot see that the court erred in its ruling. The court ruled correctly that the question put related to a matter immaterial to any definite issue in the cause.

2. The defendant's counsel, on cross-examination, asked this question: " Did you testify in the lower court about holding a conversation with these defendants, or either or any of them, upon Washington Street, or any other place, prior to meeting them in your room? Mr. Coffey: If there is testimony, I think it ought to be read, and I object to it. The Court: It would not be material whether he did or not. If you want to test his credibility, ask him what he did testify, and read it to him. Mr. Smith: I submit the question." The court sustained the objection, and defendant excepted.

The object of the question was most clearly to impeach the witness. While a witness may be impeached by evidence that he has made at other times statements inconsistent with his testimony, still the law requires, if such statements are in writing, that they shall be shown to the witness before any question is put to him con-

cerning them.   (Code Civ. Proc., sec. 2052.)   The language of the section is "must be shown."   When the remarks of the court and the prosecuting counsel were made in relation to reading the testimony to the witness, defendant's counsel did not state that the testimony was not in writing.   And as in most cases the testimony before the examining court or magistrate (in this case the police judge) is taken down in writing (Pen. Code, sec. 869), and defendant's counsel did not, when the remarks above referred to were made by the court and counsel, state that they were not in writing, we are of opinion that, under such circumstances, we must presume that the testimony referred to in the question was in writing.   The witness then had a right, before being called on to answer the question put, to see the writing. (Code Civ. Proc., sec. 2052.)   The object of requiring the writing to be shown him was that he might have an opportunity of inspecting and examining it, and if he chose, of reading it.

The witness on the stand was a Chinaman, and was unable to read the testimony.   He was at the time testifying through an interpreter.   The written testimony was in English,—a language unknown to him.   The object of showing it to him was that he might make himself acquainted with its contents.   To do this, one acquainted with the language in which it was written must read it to him.   If this could not be done, then the object of the law requiring the writing to be shown to him would be defeated.   Here the court required counsel putting the question to read the testimony to the witness.   Counsel, without giving any reason why he declined to read as required, did not read, preferring, as it seems, to stand on the question without reading anything to the witness.   The provision of the statute (Code Civ. Proc., sec. 2052) above referred to was made for the protection of the witness.   The court did no more than to enforce such protection.   In doing so, he did

nothing prejudicial to any substantial right of the defendants. It will be observed that the language of the section above referred to is, that if the statements are in writing, they must be shown to the witness "*before any question is put to him concerning them.*" The writing must be shown to the witness that he may have an opportunity for inspection and examination, and acquainting himself with its contents, and he is allowed time for that purpose. (*Morrison* v. *Myers,* 11 Iowa, 538; *Gaffney* v. *People,* 50 N. Y. 423.) We think it follows from the above that where the witness cannot read, or where the writing is in a language to him unknown, he is entitled to have it read to him that he may be able to say whether the writing is his evidence or not. According to the views above stated, we are of the opinion the court committed no error in its ruling on the point before us.

3. The same witness was asked this question by counsel for defendants on cross-examination: "Did you suspect they had any intention of robbing you?" In this the pronoun "they" referred to defendants and the two other persons with them. The witness had testified that he met the defendants and two other persons on Washington Street, near the entrance to the building on that street in which his room was. One of them asked him where he was going. The witness answered that he was going to collect some money on Pacific Street. After saying this he started to go upstairs to his room, and four persons followed him upstairs, when he (witness) lay down on a bunk. Pretty soon, after coming up into the room, they said to the witness if he collected some money they would like to borrow a few tens, not saying exactly how much. The witness said to them that he had no money to lend. They then said they wanted the money, and if he would not lend it to them they would take it from him. They insisted that the witness should let them have some money, and finally one of them seized him, and they proceeded to rob him. On

the cross-examination the witness stated: "They followed immediately after my going to my room; I did not invite them." Just following this, the question above quoted was put to the witness. While the question should have been allowed, yet in view of the evidence of the policeman Glennon, and O'Sullivan, who came very soon after to the room mentioned in the testimony of the complaining witness, which tended strongly to corroborate the statements of the witness, we cannot say that the error was prejudicial to the defendants. The conduct of the witness tends strongly to show that he entertained no such suspicion until he was seized by one of the defendants in order to effect the robbery, for he entered the room and lay down on his bunk. If he entertained any such suspicion, he certainly would not have assumed a recumbent position, and would not have omitted to fasten the door to his room. In this view, we do not think the refusal of the court to allow the question was of such a character as to call for a reversal of the order or judgment.

4. There was no error in the refusal of the court to instruct the witness to find out, during a recess which occurred in the progress of the trial, the number of the wash-house occupied by the Chinaman Kee, of whom he had testified he had collected the money of which he was robbed. We are not aware that it is the duty of the court to give any such instruction. While it is usual for the court to direct or request a witness to ascertain some fact during a recess, and we never knew a request of this character refused, still it is in the discretion of the court so to do, and such a refusal is not reviewable here. It is the duty of a court to compel a witness to answer a proper question. But we are not acquainted with any law which makes it the duty of the court to compel a witness to procure the information necessary to answer it. The counsel might himself have asked the witness to ascertain the number of the house during the recess,

and if he failed to do so, might have shown such failure. Further, we are of opinion that, by employing reasonable diligence, the counsel, during the recess, might have ascertained the number of the house referred to, or have found out that there was no such wash-house on Pacific Street at the date spoken of by the witness, and during the same time might have procured witnesses to establish whatever he had discovered to be the fact.

5. Portions of the charge to the jury are assailed as erroneous. The court told the jury: "You should carefully determine the amount of credibility to which their evidence is entitled. If convincing, and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it." This is said to be error. We cannot regard it as such. The first clause is undoubtedly correct. The jury in it were told that it was their duty to *carefully* determine the credibility to which the evidence referred to is entitled. The last clause amounts to this: If upon examination of the evidence in all its bearings, and in relation to and in connection with the other evidence in the cause, you find it to be unworthy of credit, and false and untrue, you have a right to reject it from your consideration altogether. It is said by counsel for defendants in relation to this direction: "The fact that it is not convincing and carrying with it a belief in its truth does not authorize its rejection. It is still to be considered, under all the circumstances, for all it is worth; perhaps it might be sufficient, under all the evidence, to create a reasonable doubt." When evidence is examined, and the conclusion is arrived at that it is not convincing and carrying with it a belief in its truth, such conclusion is that it is false and untrue. How evidence that is false and untrue can create a reasonable doubt we cannot perceive.

As to the other portions of the charge to which our attention is called, we think it only necessary to say that, taking the charge as a whole, we find nothing in it

calling for a reversal by this court. The law bearing on the case was fairly stated to the jury, in a way which could not have misled it.

There is no error in the record, and the judgment and order must be affirmed.    So ordered.

SHARPSTEIN, J., and McFARLAND, J., concurred.

Hearing in Bank denied.