(May 15, 1893.)

## LEWIS v. LEWIS.

[33 Pac. 38.]

JUDGMENT OF NONSUIT.—Under subdivision 5, section 4354 of the Revised Statutes of 1887, the court may enter a judgment of nonsuit where the plaintiff fails to prove a sufficient case for a jury.

RESULTING TRUST.—The evidence shows that plaintiff established a resulting trust in his favor and made a *prima facie* case. The court erred in entering a judgment of nonsuit.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Spence & Chalmers, John A. Bagley, and Hawley & Reeves, for Appellants.

The court erred in granting judgment of nonsuit when evidence tending to sustain the issues presented in the complaint is given. (*Craven v. Nolan* (Cal.), 8 Pac. 518; *Heilbron v. Last Chance etc. Ditch Co.* (Cal.), 9 Pac. 456; *Munroe v. Williams,* 35 S. C. 572, 15 S. E. 279; *Holt v. Van Eps,* 1 Dak. 1, 46 N. W. 689; *Cravens v. Dewey,* 13 Cal. 40; *Williams v. Norton,* 3 Kan. 295; Hayne on New Trial and Appeal, sec. 117.) The

evidence shows that the ground in controversy was purchased by the defendants for the plaintiff, as agents for the plaintiff. (1 Parsons on Contracts, 86-88; 1 Story's Equity Jurisprudence, secs. 315, 316, 463; *McClendon v. Bradford,* 42 La. Ann. 162, 7 South. 78, 8 South. 256; *Edwards v. Dooly,* 120 N. Y. 540, 24 N. E. 827.) The evidence shows that at the time of said purchase the plaintiff was the real owner of all of said town lots in said complaint mentioned, and since that time has not parted with the title thereto or of any interest therein. (*Brennan v. Garton,* 17 Cal. 375; *Moon v. Rollins,* 36 Cal. 333, 95 Am. Dec. 181; *Page v. Fowler,* 37 Cal. 100; *Brant v. Wheaton,* 52 Cal. 430; *Tate v. City of Sacramento,* 50 Cal. 243; 1 Bates on Partnership, secs. 266, 284-286.) The evidence shows that the defendants in purchasing said town lots from the government were acting as agents of the plaintiff, and in taking the deeds in their own names perpetrated a fraud upon the plaintiff. The *cestui que trust* had a right at any time to demand a performance of the trust, and the evidence shows the existence of such trust. The taking the deeds in the name of the trustee does not alter the trust, nor prevent the *cestui que trust* from establishing his rights to the property at any time within the statute of limitations. (Mechem on Agency, 457-459; *Wood v. Fox,* 8 Utah, 380, 32 Pac. 48; *Reese v. Murnan,* 5 Wash. 373, 31 Pac. 1027.)

H. W. Smith and T. L. Glenn, for Respondents.

The complaint did not state facts sufficient to constitute any cause of action in case of any implied trust. The facts constituting a trust must be clearly set out in the bill. Not only must the trust be clearly alleged, but all of the facts out of which it arises or is claimed to result. (Perry on Trusts, 4th ed., sec. 137, p. 162; *Cumming v. Robbins,* 39 N. J. Eq. 46; *Slocum v. Marshall,* 2 Wash. C. C. 397, Fed. Cas. No. 12,953; *Corey v. Callan,* 6 B. Mon. 44; *Green v. Dietrich,* 114 Ill. 636, 3 N. E. 800; *Witts v. Harney,* 59 Md. 584; *Philpot v. Penn,* 91 Mo. 38, 3 S. W. 386; *Olcott v. Bynum,* 17 Wall. 44; *Buck v. Swazey,* 35 Me. 51, 56 Am. Dec. 681; *Conner v. Lewis,* 16 Me. 274.)

SULLIVAN, J.—This action was brought by the appellant to compel the respondents to convey the title to lots 14 and 15, in block 448, and lot 7, block 489, and lots 4 and 5, in block 485, in the town of Pocatello. The complaint, among other things, alleges that plaintiff, in the year 1891, furnished the defendants the sum of $165, to be used by defendants in the purchase of the above-described town lots; that said lots were sold at public sale, under and by virtue of an act of Congress; that defendants purchased said lots for and on behalf of plaintiff, and thereafter, with intent to defraud plaintiff, they took the title thereto in their own names, and refuse to convey to plaintiff. The answer is a specific denial of the allegations of the complaint. The case was tried by the court without a jury, and at the close of plaintiff's testimony, on motion of defendants, a nonsuit was granted, and judgment entered against him. A motion for a new trial was interposed and overruled. This appeal is from the judgment and order denying the motion for a new trial.

The main question presented by the record for determination is whether the court erred in granting a nonsuit. The judgment of nonsuit was granted under subdivision 5, section 4354 of the Revised Statutes of 1887, which is that a judgment of nonsuit may be entered "by the court upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient cause for the jury." The record contains the evidence given at the trial, and establishes the following facts: That a firm by name of Lewis Brothers was doing business as merchants at the town of Montpelier, Bear Lake county, Idaho, and a firm by the same name was doing business as merchants at Pocatello, Bingham county. The Montpelier firm was composed of the appellant and Hyman Lewis, one of the respondents, and the Pocatello firm was composed of the respondents. The record shows that appellant had removed five dwelling-houses from the town of Shoshone, and had placed them upon the lots described in the complaint, at which time the title to the lots was in the United States. Respondents acted as the agents of appellant in renting said houses and collecting the rents therefrom and in keeping said buildings in repair. The expense of removing said buildings from Shoshone to Pocatello

and the repairing of the same was charged to appellant in his private account with said firm. On July 14, 1891, the respondents wrote the following letter to the appellant:

"Pocatello, Idaho, July 14th, 1891.
"Mr. Sam Lewis, Montpelier, Idaho.

"Dear Bro.: They are selling lots now, and we are very pushed for money. The following are your five houses, and what the lots are appraised for: Two lots, $65; one lot, $25; two lots, $85; total, $175. We don't know what they will sell for, but you would help us a great deal by sending us the above amount, as we need all the money we got to buy our own lots, and we don't know what we are going to do."

The record shows that in the latter part of July, 1891, and before said lots were sold by the government, the respondent Simon Lewis visited Montpelier, and had a conversation with the appellant in regard to said lots, and then told appellant to send them money, and they would attend to buying said lots for appellant. This conversation is sworn to by appellant and one H. Gises, a witness on behalf of plaintiff. Said witness testified as follows: "I was in Montpelier September last, and was clerking for Lewis Brothers. Mr. Simon Lewis came to Montpelier some five or six days before the lots were to be sold at Pocatello, and said that he wanted some money to purchase the lots on which your houses stand. He said he did not know how much it would come to, but would like him to spare three hundred dollars; and Sam said: 'All right; you purchase these lots for me at whatever they amount to, and if they are more I will send you the balance.' Simon said: 'All right; we will telegraph you.' I saw the telegram. It came some time in July, 1891. The telegram read: 'Send money at once to purchase your lots.' He sent them two checks—one for two hundred dollars, and one for one hundred dollars—the same day the telegram came." Copies of the two checks are contained in the record, and bear date of July 30, 1891. Witness Gises further testified that they said they bought the lots cheap; $165 was all they cost; and that Sam sent them the money that bought them. The record contains the following letter:

"Pocatello, Idaho, July 31, 1891.
"Lewis, Bros., Montpelier, Idaho:

"We got two of your lots at the appraised value. We think there will be no danger. (Signed) LEWIS BROS."

The record also contains a copy of the private account of appellant with Lewis Brothers, of Pocatello, who are the respondents. This account contains numerous items—one for freight on houses, $259.82; for nails, glass for windows, and one for addition to houses, $180; also one item as follows: "August 5. Paid for lots, $165." The account also contains a credit item without date as follows: "By land not paid as notice given, $165." It appears that there was a dissolution of partnership about the 1st of September, 1891, and appellant executed a mortgage which bears date September 3, 1891, to the respondents, to secure the payment of $10,797.42, and by said mortgage gave respondents security for the payment of said sum—the lots above described, with certain other property.

There is no conflict of testimony in this case. The evidence shows that the appellant removed from Shoshone five dwelling-houses to Pocatello, and placed them upon the lots in question, expended considerable money in putting the same in repair and erecting additions thereto. The appellant had a conversation with respondent, in which he agreed to attend to the purchasing of said lots for him. In the letter above quoted of July 14, 1891, respondents notified appellant of the appraised value of said lots, and requested him to send them money to pay for them. On July 30th respondents wired appellant, "Send money at once to purchase your lots," and in response thereto appellant sent them $300; and on July 31, 1891, respondents informed appellant by letter as follows: "We got two of your lots at the appraised value. We think there will be no danger"; and of date August 5th respondents charge appellant with $165, the cost price of said lots; and on September 3d following they take a mortgage on said lots to secure the payment of a sum of money owing from appellant to them. Respondents contend that appellant failed to establish a resulting trust in his favor, and cite *Olcott v. Bynum,* 17 Wall. 44, wherein the court said: "Such a trust must arise, if at all, at the time the purchase is made. The funds must then be advanced and invested. It

cannot be created by after-advances, or funds subsequently furnished." The principle there stated supports the contention of the appellant, and is against that of respondents. In the case at bar the funds for the purchase of the lots were furnished by appellant before the purchase was made. If the appellant in this case failed, under subdivision 5, section 4354, *supra*, "to prove a sufficient case for a jury," we think it would be most difficult to prove one. To permit respondents to hold the lots in controversy, with the houses and improvements placed thereon by the money of appellant, under the above evidence, would be most inequitable and unjust. The court erred in granting a judgment of nonsuit, and erred in not granting a new trial. The judgment of the court below is reversed, and a new trial granted, with costs of this appeal in favor of appellant.

Huston, C. J., and Morgan, J., concur.