(November 3, 1909.)

# JOSEPH P. KEANE, Appellant, v. THE PITTSBURG LEAD MINING COMPANY, a Corporation, Respondent.

## [105 Pac. 60.]

WITHDRAWAL OF CASE FROM JURY—BEST EVIDENCE—WITNESS STATING CONTENTS OF WRITING—CONTRACT—AUTHORITY OF AGENT—RES ADJUDICATA—INTERVENTION — JUDGMENT TAXING COSTS—APPEAL FROM.

1. Where the pleadings present an issue of fact, and there is evidence which tends to support the allegations of the complaint, and it is necessary to determine such issue of fact in order to determine whether the plaintiff or the defendant shall recover, an instruction which directs the verdict of the jury for the defendant has the same effect as the sustaining of a motion for a nonsuit, and admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and is to the effect that there is no evidence supporting the plaintiff's case and that the evidence would not support a verdict, even if found for the plaintiff; and if there is evidence supporting the complaint, such instruction is erroneous.

2. Where certain facts appear of record or in written instruments, it is error for the court to admit oral testimony of the contents of such records or instruments without first showing their loss or disappearance and the inability to produce the same.

3. Where a witness is asked if he did not write a certain letter containing certain matter, and objection is made to such question, without such witness being shown such letter or given an opportunity to identify the same, it is error for the court to overrule such objection.

4. Where the relationship between K. and V. is fixed by contract, it is error to permit V. to testify as to what his understanding of the matter was, as the question is one of contract and is to be determined by the contract, and not by V.'s understanding of the relationship.

5. Where the authority of an agent is called in question, it is error to permit the agent to testify as to his opinion of his authority, as the question is not one of the witness' opinion as to authority but what the authority in fact was.

6. The basis upon which an adjudication bars a future action is, that the same question or matter was actually and directly in issue, and judicially determined in the former suit between the same parties or their privies by a court of competent jurisdiction.

7. Where a petition to intervene is filed, and the prayer of such petition is granted upon condition that the petitioner file an answer or cross-bill within a fixed time and he fails to file such answer or cross-bill and judgment *pro confesso* is entered against him, the effect of such judgment is only to preclude his right to intervene, but does not conclude him upon any matter which might have been put in issue by such answer or cross-bill.

8. A judgment against a petitioner to intervene, disallowing such petition or dismissing the same because an answer or cross-bill is not filed, will not support the plea of *res adjudicata,* as the judgment is only a judgment of nonsuit.

9. Where the question of the authority of an agent to make a contract is in issue, all evidence which tends in any way to show such authority or the limitation upon such authority is admissible.

10. An order of the court made after final judgment, taxing costs, is an order from which a separate appeal is allowed; and an appeal from the judgment does not present to this court for review the action of the court in taxing costs; and the memorandum of costs and the motion to retax are not properly a part of the record on appeal from the judgment.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, in and for Shoshone County. Hon. W. W. Woods, Judge.

An action to recover debt. Judgment for defendant. Plaintiff appeals. *Reversed.*

Gray & Knight, and Wm. K. Shissler, for Appellant.

This court has repeatedly held that if the evidence introduced in an action even tends to establish the allegations of the complaint, its sufficiency should be determined by the jury and not by the court. (*Kansteiner v. Clyne,* 5 Ida. 59, 46 Pac. 1019; *Black v. City of Lewiston,* 2 Ida. 276; *Lewis v. Lewis,* 3 Ida. 645, 33 Pac. 38; *Simpson v. Remington,* 6 Ida. 681, 59 Pac. 360; *Idaho Merc. Co. v. Kalanquin,* 7 Ida. 295, 62 Pac. 925; *York v. Pacific & Northern Ry. Co.,* 8 Ida. 574, 69 Pac. 1042; *Idaho Comstock Min. & Mil. Co. v. Lundstrum,* 9 Ida. 257, 74 Pac. 975; *Small v. Harrington,* 10 Ida. 499, 79 Pac. 461; *Later v. Haywood,* 12 Ida. 79, 85 Pac. 494; *Adams v. Bunker Hill etc. Min. Co.,* 12 Ida.

643, 89 Pac. 624; *Pilmer v. Boise Traction Co.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Colvin & Rinard v. Lyons*, 15 Ida. 180, 96 Pac. 572.)

A judgment simply dismissing the demand of an intervenor on the ground that he was absent and not represented at the trial of the cause cannot support the appeal of *res adjudicata*. The judgment is strictly one of nonsuit. (Black on Judgments, sec. 700.)

"A judgment of nonsuit, voluntary or involuntary, is not a bar to another action for the same cause." (*Gummer v. Omro*, 50 Wis. 247, 6 N. W. 885.) "A nonsuit is not a determination of a cause of action upon the merits and does not become a bar to another action." (*Merrick v. Hill*, 77 Hun (N. Y.), 30, 28 N. Y. Supp. 237.)

"When a suit in equity is dismissed without a consideration of the merits, the dismissal should be without prejudice." (*Swan Land & Cattle Co. v. Frank*, 148 U. S. 606, 13 Sup. Ct. 691, 37 L. ed. 578; *Kendig v. Dean*, 97 U. S. 423, 24 L. ed. 1061; *Waltes v. Wood*, 61 Iowa, 290, 15 N. W. 116; *Kern v. Wilson*, 81 Iowa, 407, 48 N. W. 919.)

Kerns & Ryan, for Respondent, cite no authorities.

STEWART, J.—At the close of the evidence the court gave to the jury the following instruction: "Gentlemen of the jury, the court instructs you, as a matter of law, that the evidence is insufficient to support a verdict in favor of the plaintiff in this case and you are, therefore, instructed to find for the defendant." In accordance with this instruction the jury returned a verdict for the defendant. Plaintiff moved for a new trial, which was overruled, and this appeal is from the judgment and from the order overruling the motion for a new trial.

The plaintiff claims that he was one of the incorporators of the California Consolidated Mining Company and subscribed for 333,333 shares of the capital stock of said company, which shares were issued and delivered to the plaintiff; that 216,667 shares of said stock were indorsed in blank by the plaintiff and were deposited with James

Viles of Chicago, Illinois, for the purpose of sale; that J. H. McClarren of Pittsburg, Pennsylvania, was engaged in negotiations for the purchase of a majority of the stock of the California Consolidated Mining Company and other mining claims adjoining, for the purpose of organizing a corporation and promoting the development of said property. That McClarren opened negotiations with Viles and this plaintiff for the purchase of the majority of the capital stock of the said California Consolidated Mining Company, said Viles and the plaintiff being the principal stockholders of said company, and that said stock was deposited by this plaintiff with Viles at the request of McClarren, with instructions to deliver the same to McClarren or upon his order upon the payment to said Viles for said stock of the sum of ten cents per share, to wit, $21,066.70; that McClarren knew that the plaintiff was the owner of said stock and that Viles was acting solely and only as the agent of the plaintiff; that on March 28, 1905, Viles sold, transferred, assigned and delivered the said 216,667 shares of stock to McClarren, as trustee for the defendant, and that said McClarren took and accepted said stock from said Viles and caused the same to be duly transferred upon the books of the corporation into the name of McClarren, trustee, for the defendant; and afterward caused the defendant to be incorporated and thereafter conveyed said 216,667 shares to the defendant; that neither McClarren nor the defendant has paid the purchase price for said stock and the same is due, for which judgment is demanded..

The defendant admits that the plaintiff was a subscriber for 333,333 shares of the capital stock of the California Consolidated Mining Company, but denies that such stock was ever issued and delivered to the plaintiff, and denies that the plaintiff was the owner of 216,667 shares, or that the same were indorsed in blank by plaintiff and deposited with Viles for sale; admits that J. H. McClarren was engaged in negotiating for the purchase of a majority of the stock of the California Consolidated Mining Company and opened negotiations with James Viles, but denies that McClarren ever had any negotiations with the plaintiff, and denies that

Viles was instructed to deliver said stock to McClarren or to his order upon the payment to Viles of the sum of ten cents per share, to wit, $21,066.70; denies that McClarren knew that the plaintiff was the owner of said stock, and that Viles was acting solely and only as the agent of plaintiff; denies that on March 28, 1905, Viles sold, transferred, assigned or delivered said certificates of stock to McClarren or that McClarren took or accepted said stock from Viles or caused the same to be transferred upon the books of the corporation in the name of McClarren, trustee; denies that McClarren thereafter conveyed to the defendant the said 216,667 shares of stock in the California Consolidated Mining Company or that the defendant has since been or now is the owner thereof; admits that the stock has never been paid for either by the defendant or McClarren, and alleges that they refused to pay for the same. It is further alleged that in the year 1904 J. H. McClarren, acting as trustee, began negotiations with James Viles, Jr., the president of the California Consolidated Mining Company, for the purchase of a majority of the shares of the capital stock of that company, and that Viles represented to McClarren that said company owned various assets, including the title to the California lode mining claim, free and clear of all encumbrances, and with this understanding McClarren took an option from said Viles for the purchase of the majority of the stock of said company; that such dealings were exclusively with Viles individually and as president of the California Consolidated Mining Company, and that Viles had such stock in his possession; that during the life of the option McClarren discovered that a 13/16 interest in the California lode mining claim, together with said shares of stock in the California Consolidated Mining Company which had been or were to be issued in payment therefor, had been attached by the receiver of the Coeur d'Alene Bank in a suit of the said bank against one George B. McAulay, and that Viles represented and agreed that the said litigation would be disposed of and any and all liens against the 13/16 interest satisfied or disposed of, and that he would give good title to all the shares of stock which he agreed to sell;

and that in the event the California Consolidated Mining Company should by reason of said litigation lose the said 13/16 interest in the California lode mining claim, all shares of stock which had been issued in payment of the said 13/16 interest should not be outstanding against the company but should be surrendered for cancellation, and that Viles stated that he had all of said shares amounting to 216,667 in his possession as president of the California Consolidated Mining Company, and that his understanding and agreement with the company was that these shares were held by him as a guaranty that the said 13/16 interest in the California lode mining claim should be transferred and assigned to said company free and clear of all encumbrances, and that said 216,667 shares of stock are the same as are referred to in the plaintiff's complaint, and with said understanding and upon said conditions said McClarren agreed to purchase the stock offered by said Viles, amounting in all to 930,000 shares, and at various times made payments upon said contract; that relying upon Viles' ability to perform his part of said contract, Viles, about March 28, 1905, caused a certificate of stock to be prepared for 913,334 shares in the name of J. H. McClarren, but that said stock was not delivered to McClarren nor accepted by him, but was held by Viles pending the final completion of the contract; that at the time said stock was made out the litigation involving the 13/16 interest was still in progress; that on November 13, 1905, McClarren tendered to said Viles the balance of the purchase price agreed upon and demanded compliance upon his part of said contract, and being unable to comply with the terms of said contract agreed with McClarren that if he would then pay for the balance of the stock, Viles would deliver the same to McClarren and would place the 216,667 shares of stock in controversy in escrow, McClarren to place the money agreed to be paid therefor also in escrow upon a joint agreement, whereby the stock and money were to be disposed of under certain conditions embodying the terms of the agreement and understanding upon which the original contract for the purchase of the majority of the stock had

been made; that said agreement was prepared and the stock and cash deposited with the Colonial Trust Company of Pittsburg, Pennsylvania, and the balance of the 930,000 shares of stock was issued to the Pittsburg Lead Mining Company; that thereafter the 13/16 interest in the California lode mining claim was sold by the sheriff of Shoshone county in satisfaction of liens referred to in the contract in escrow, and a certified copy of the record of such litigation was submitted to the Colonial Trust Company and demand made upon it by McClarren for the return to him of the money deposited and to deliver the certificate for 216,667 shares to the officials of the California Consolidated Mining Company for cancellation; that the Colonial Trust Company refused to take action in the matter, and thereupon a bill in equity was filed in the court of common pleas No. 2 of Allegheny county, Pennsylvania, a court of competent jurisdiction, wherein McClarren, trustee for the defendant, was complainant and the Colonial Trust Company and James Viles were respondents; that after said bill of complaint had been served, J. P. Keane, the plaintiff in this action, appeared in court by attorney and filed a petition to intervene, alleging that he had been the owner of the 216,667 shares and that Viles had succeeded his authority as agent and that he, Keane, was entitled to the proceeds of the alleged sale of stock; that after hearing the court made an order granting the prayer of the petitioner, and gave Keane permission to file an answer or cross-bill; and afterward made a decree against Keane *pro confesso* and entered a decree directing that the 216,667 shares of stock be surrendered to the officials of the California Consolidated Mining Company for cancellation and the money be returned to McClarren, trustee; that the claims of Keene in this action have already been adjudicated by a court of competent jurisdiction.

It will thus be seen the plaintiff contends that he and Viles, his agent, made a contract by which the plaintiff sold to McClarren, trustee for the defendant, the 216,667 shares of stock, with other stock in the California Consolidated Mining Company, for the sum of ten cents per share; and

that such stock was delivered to McClarren, trustee for the defendant, and transferred on the books of the California company and a certificate for such stock issued to said Mc-Clarren as trustee; and that the defendant has not paid therefor.

The defendant contends that he had no negotiations with plaintiff for the purchase of such stock, but did enter into a contract with Viles for the purchase of stock in the California company, with the understanding and agreement that the title to all stock should be clear and free of all liens and clear of all encumbrances; that the stock claimed to have been owned by the plaintiff was not delivered to the plaintiff, for the reason that the interest in the California lode, for which such stock was to be issued, was involved in litigation and that the stock was not to be delivered until such litigation was terminated and in favor of the plaintiff; and because such interest was involved in litigation, Viles was unable to deliver such stock to the defendant and unable to comply with his part of the contract; and that thereafter, in view of such litigation, Viles and McClarren entered into an agreement whereby such stock and the purchase price were deposited in escrow to await the determination of such litigation, and that such litigation was afterward determined adversely to the interests of plaintiff; that thereafter an action was brought in a court of competent jurisdiction in Pennsylvania by McClarren against the defendant and the escrow holder, in which the plaintiff herein asked to intervene, and which was granted, in which judgment was entered against the plaintiff *pro confesso* and in favor of the defendant, ordering the return of the money deposited by McClarren and the surrender for cancellation of the 216,667 shares of stock in the California company.

It appears from the record that in the suit brought in the Pennsylvania court the plaintiff herein filed a petition to intervene, and was given permission by the court to file an answer or cross-complaint but never filed such pleading or appeared further in such action. Upon the part of the respondent it is contended that the judgment rendered in

said action is *res adjudicata* as to the subject matter of controversy in this case.   While the appellant contends that the rights of Keane were not involved in said action, that he was not a party to the suit, and that the judgment therein in no way estops him from maintaining this action.   Keane testified to substantially the facts as alleged in his complaint, and it further appeared from the evidence that after it was claimed the contract was made with reference to the sale of the California stock to McClarren, that a stock certificate in such company was issued in the name of McClarren and the stock transferred on the books of the company.   There was other documentary evidence in the way of correspondence which tended to corroborate the evidence of Keane.   On the other hand, the evidence of Viles, McClarren and Gerwig, and the documentary evidence introduced by the defendant tended very strongly to support the position maintained by the defendant.   Thus the evidence offered presented a very strong conflict.   If the testimony of Keane and the facts tending to corroborate him are to be believed, then he was entitled to recover in this action.   If, upon the other hand, the evidence of the witnesses for the defendant and the documentary evidence tending to corroborate them be believed, then the judgment should have been for the defendant.   With this state of the record, it was clearly error for the trial court to take the case away from the jury and arbitrarily instruct them to find a verdict for the defendant.

The pleadings presented an issue of fact, and there was evidence which tended to support the allegations of the complaint, and it was necessary to determine such issue of fact in order to determine whether the plaintiff or the defendant should recover in this action.   An instruction which directs the verdict of the jury for the defendant has the same effect as the sustaining of a motion for a nonsuit, and admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and is to the effect that there is no evidence supporting the plaintiff's case, and that the evidence would not support a verdict even if found for the plaintiff.   There being evidence tending to prove the allegations of the complaint, such in-

struction was erroneous. (*Black v. City of Lewiston,* 2 Ida. 276, 13 Pac. 80; *Lewis v. Lewis,* 3 Ida. 645, 33 Pac. 38; *Kansteiner v. Clyne,* 5 Ida. 59, 46 Pac. 1019; *Simpson v. Remington,* 6 Ida. 681, 59 Pac. 360; *Idaho Mercantile Co. v. Kalanquin,* 7 Ida. 295, 62 Pac. 925; *York v. Pacific & Northern Ry. Co.,* 8 Ida. 574, 69 Pac. 1042; *Idaho Comstock Mining & Milling Co. v. Lundstrum,* 9 Ida. 257, 74 Pac. 975; *Small v. Harrington,* 10 Ida. 499, 79 Pac. 461; *Later v. Haywood,* 12 Ida. 78, 85 Pac. 494; *Adams v. Bunker Hill etc. Mining Co.,* 12 Ida. 637, 89 Pac. 624; *Pilmer v. Boise Traction Co.,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Colvin & Rinard v. Lyons,* 15 Ida. 180, 96 Pac. 572.)

Numerous objections were made to the introduction of certain evidence, in which witnesses were asked to recite certain facts which were matters of record and appeared in written instruments, without first showing the loss of such records or instruments and inability to produce the same. This evidence should not have been allowed by the court, as the written documents or papers were the best evidence.

Upon cross-examination the plaintiff was asked as to the consideration for which the stock in controversy was originally issued to him by the California Consolidated Mining Company. This inquiry was proper as touching the plaintiff's ownership of said stock, the answer alleging that such stock was to be issued under a contract, by the terms of which the stock was not to be delivered or become the property of the plaintiff until he had made good title to the property for which the stock was to be issued. This answer made the inquiry germane and proper under the issues. On cross-examination the plaintiff was asked this question: "Did you on February 3d, 1906, send a paper to James Viles in Chicago, with instructions to Mr. Viles for depositing your stock with the Colonial Trust Company in Pittsburg, and Mr. McClarren for depositing the $16,000 and some hundred dollars in the bank to await the event of certain litigation then pending and you thereby released Mr. Viles as your

agent from any further liability to you?'' Objection was made to this question until the witness was shown the paper or instrument containing such language for identification. This objection should have been sustained. Sec. 6083, Rev. Codes, provides:

''A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them.'' (*People v. Ching Hing Chang,* 74 Cal. 389, 16 Pac. 201; *People v. Lee Chuck,* 78 Cal. 317, 20 Pac. 719.)

The witness Keane was asked as to his connection with the stock of the *California Consolidated Mining Company v. Manley, Sheriff,* and his verification of the pleadings. In this we find no error. There might have been some fact contained in such pleadings, which counsel desired to use to contradict or impeach the witness, and it also may have had a tendency to show Keane's connection with the 13/16 interest in the mining claim for which the stock in controversy is claimed to have been issued.

On the cross-examination of the witness Viles, he was asked as to his understanding as to when Keane should be paid for his stock. This question was objected to and the objection should have been sustained. It was immaterial what Keane's understanding was in this matter, as the contract determined how the stock should be paid for; and the answer of the witness should have been stricken out upon the motion made by plaintiff. The same witness was asked this question: ''You had full authority to make that agreement in escrow from Mr. Keane?'' This question was clearly erroneous. It was not what the witness' opinion may have been as to what his authority was that determined his authority, but such authority must be determined from the facts. The witness was also asked: ''As a matter of fact,

Mr. Viles, didn't you write Mr. McClarren frequently on the subject of the title to Mr. Keane's stock?" This inquiry calls for the witness' statement as to what he wrote and is hearsay. The writing was the best evidence and the objection should have been sustained.

Under the answer we think the court did not err in admitting in evidence the articles of incorporation of the California Consolidated Mining Company or the agreement made between Keane and the company as to the stock to be issued to him, also the pleadings, proceedings and judgment in the case of the *California Consolidated Mining Company v. Manley, Sheriff,* and the pleadings, proceedings and judgment in the case of *Kerns, Receiver, v. McAulay et al.* These records were admissible as touching the ownership of Keane of the stock claimed by him.

Counsel for appellant suggest in their printed brief that the reason the trial court gave the peremptory instruction to find for the defendant was that in the opinion of the court the matters in controversy in this case were *res adjudicata* by the judgment entered in the Pennsylvania court. The record in the Pennsylvania court was offered and received in evidence over the objection of appellant and the ruling of the court is assigned as error. An examination of this record shows that the action was brought by J. H. McClarren, trustee for the *Pittsburg Lead Mining Company v. Colonial Trust Company and James Viles, Jr.* On September 22d the minutes of the court show that Joseph P. Keane filed a petition to intervene, and that the same was granted on condition that the said Joseph P. Keane file his answer or cross-bill or both within fifteen days from date. On October 29th the record shows: "It appearing that on the 22d day of September, 1906, one J. P. Keane was granted permission to intervene as a party defendant on condition that he file an answer or cross-bill within fifteen days; and it further appearing that more than fifteen days have elapsed and that no answer or cross-bill has been filed by said J. P. Keane on motion a decree is entered against J. P. Keane, *pro confesso.*" This is the only mention made in the min-

utes of the court or the decree of J. P. Keane or his connection with such action or proceeding.

The bill of complaint filed in such action in effect alleged that McClarren, acting as trustee for the Pittsburg Lead Mining Company, entered into an agreement with James Viles, Jr., by correspondence, under the terms of which there was to be deposited with the Colonial Trust Company by McClarren $16,587.46 and by Viles a certificate for 216,-667 shares of the capital stock of the California Consolidated Mining Company; that in pursuance of such agreement the stock and cash were deposited and accepted by the Colonial Trust Company under the terms set forth in the contract; that one of the conditions in the contract was: "Should the amount required to remove within mentioned liens from the 13/16 of the California lode claim be greater than the sum of $22,587.46, then the said Colonial Trust Company shall redeliver said sum of $16,587.46 to J. H. McClarren, Trustee, and shall deliver said certificates for 216,667 shares of capital stock of the California Consolidated Mining Company to the officials of said Company for cancellation." That since said certificate and money were so deposited, the said 13/16 interest in the California lode claim was sold by the sheriff of Shoshone county, Idaho, in satisfaction of the liens referred to amounting to $58,950.76; that a record of such sale was presented to the trust company and demand made for the return of the money and the surrender of the certificates for cancellation; that the trust company refused to comply with such demand.

This record was clearly inadmissible, and in no way affected or adjudicated the rights of Keane to the stock in controversy in this case. Keane filed a petition to intervene. This petition was granted on condition, the condition being that he file an answer or cross-bill within fifteen days. Under this condition, if he failed to file the answer or cross-bill within the time, then he had no right to intervene, and having failed to file an answer or cross-bill within the fifteen days under the order of the court, he did not intervene and had no right to intervene, and the judgment of *pro confesso*

could mean no more than that it was a judgment against him as to his right to intervene. It certainly was not a judgment which adjudicated or settled any right he might have had as to the 216,667 shares of stock in the California company or the right to recover the purchase price for an alleged sale to McClarren, trustee for the defendant company. The basis upon which an adjudication bars a further action is that the same question or matter was actually and directly in issue, and judicially determined in the former suit between the same parties or their privies by a court of competent jurisdiction. (*Elliott v. Porter*, 6 Ida. 684, 59 Pac. 360; *Kester v. Schuldt*, 11 Ida. 663, 85 Pac. 974; *Hilton v. Stewart*, 15 Ida. 150, 128 Am. St. 48, 96 Pac. 579; Black on Judgments, sec. 536; *Kern v. Wilson*, 82 Iowa, 407, 48 N. W. 919.)

It readily appears from the record of the Pennsylvania court that the ownership of the stock in the California company or the character or nature of the contract made with McClarren for the sale of the stock or the authority of Viles to make the contract, claimed to have been made with McClarren, were in no way involved in the issues in that case or adjudicated or in a condition to be adjudicated under the pleadings. These, however, are the vital issues presented by the pleadings in this case. Mr. Black, in vol. 2, sec. 699, says: "Wherever we find the essential characteristics of a judgment of nonsuit, whatever may be the language employed in the record entry, the same trait of inconclusiveness attaches to the adjudication. Thus, for example, the entry of 'neither party' (proceeds further with the action) is no evidence of an adjudication of the merits, and no bar to a future action; it is merely equivalent to a nonsuit and default by consent. So where the record shows that the plaintiff failed to appear and his writ was 'abated and dismissed,' the defendant recovering five dollars and costs, this amounts to no more than a nonsuit, and will not bar a second action. Again, a judgment simply dismissing the demand of an intervenor, on the ground that he was absent and not represented at the trial of the cause, cannot support the plea of *res adjudicata*. 'The judgment is strictly one of nonsuit.' "

The record of the Pennsylvania court is conclusive only as to the plaintiff's right to intervene in that action. The filing of a petition to intervene is not an intervention. This clearly appears from the record presented, as it is provided therein that he might intervene by "filing an answer or cross-bill." The intervention, then, under this order took place only upon filing an answer or cross-bill. He did not become a party to the action by reason of not having complied with the order of the court. The effect of the judgment was merely to nonsuit him as to the right to intervene. It was not an adjudication of the matter involved in this case. (*Gummer v. Omro*, 50 Wis. 247, 6 N. W. 885; *Swan Land & Cattle Co. v. Frank*, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. ed. 577; *Walters v. Wood*, 61 Iowa, 290, 16 N. W. 116.)

The latter case we think clearly disposes of this question as to the admissibility of the Pennsylvania judgment. The court says: "The material question in the case, in our judgment, is whether any issue was joined between the defendants, in the Pickering action, which could be tried and determined. . . . . . Persons not made parties may intervene and have their rights adjudicated, and defendants may, as between themselves, have their rights adjudicated. But there must, ordinarily, be some pleading filed by some defendant which demands relief against a codefendant. In the action brought by Pickering no cross-petition was filed, nor was any relief asked by the plaintiffs or defendant herein against each other." (See, also, *Weber v. Mick*, 131 Ill. 520, 23 N. E. 646.)

The evidence of the witness Gerwig as to what took place between McClarren and Viles and what conversation they had with reference to the title to the stock in the California Consolidated Gold Mining Company was admissible, but could not bind the plaintiff in this action unless it be shown that Viles had authority to make the statements and agreements claimed by the witness to have been made, and this evidence should have been allowed and an instruction given accordingly. The plaintiff was asked what he had to say with reference to prosecuting the action of the *California Con-*

*solidated Mining Company v. Manley, Sheriff*, and replied:
"I tried to get McClarren to do so. I wrote him about the
matter of furnishing a supersedeas bond. He refused to do
anything." These answers were stricken out on motion of
counsel for the defendant. This was clearly error. Such
evidence was competent, for the reason that Keane testified
that in his conversation with McClarren, McClarren agreed
to take his stock subject to any claims or question about title,
and such evidence was proper as showing why Keane prose-
cuted such suit. If it was McClarren's duty to have de-
fended this case and Keane advised him of such litigation
and solicited him to do so, then such fact was proper to go
to the jury for the purpose of supporting the testimony of
Keane as to the nature of the contract made with McClar-
ren with reference to the sale of his stock.

The court did not err in sustaining the objection of the
defendant to the introduction of the deed from McClarren
to Keane or to the consideration paid for such claims, as
that matter was entirely immaterial in this controversy. The
court did not err in admitting in evidence the agreement
offered, made between Keane and the California Consolidated
Mining Company with reference to the issue of the stock sub-
scribed by him. Whether this agreement was ever relied
upon by the parties was a matter to be considered by the
jury in determining whether Keane was the owner of the
stock, for which he seeks to recover the purchase price in
this action. Under this agreement the stock was to be issued
to Keane in payment for certain mining interests to be con-
veyed to the California Consolidated Mining Company, but
was to remain in the custody of the company and not deliv-
ered until Keane made a deed with clear title to said com-
pany; yet, notwithstanding this agreement, it appears from
the evidence of Keane that the stock was issued and deliv-
ered to Keane and given into his possession, and that he
transmitted the same to Viles for delivery to McClarren upon
payment of the purchase price thereof. All these facts were
proper to show the title to the stock of Keane and whether
or not the terms of such agreement had been waived by the
company.

Certain correspondence between McClarren and Viles with reference to the stock contracted for by McClarren was offered and admitted in evidence, over the objection of the plaintiff. This correspondence was admissible, but could not bind the plaintiff unless Viles had authority to act as therein indicated, and the court should have admitted such evidence and instructed the jury that such evidence should have been considered by them only in case they found Viles had authority to do the things referred to in such correspondence.

The transcript in this case contains the memorandum of costs and disbursements, a notice of motion to retax the same, the motion to retax, the order allowing costs, and a bill of exceptions showing the ruling of the court thereon. Upon the hearing of this case in this court counsel for respondent moved to strike such matter from the transcript upon the ground that said instruments are not properly a part of the transcript on appeal herein. This motion must be sustained. An order made by the court after judgment taxing costs is an order from which a separate appeal is allowed, and an appeal from the judgment does not present to this court for review the action of the court in taxing costs; and the memorandum of costs and the motion to retax are not properly a part of the record on appeal from the judgment. (Subd. 3, sec. 4807, and sec. 4912, Rev. Codes; *Campbell v. First National Bank*, 13 Ida. 95, 88 Pac. 639; *Empire Gold Min. Co. v. Bonanza Gold Min. Co.*, 67 Cal. 406, 7 Pac. 810; *Yorba v. Dobner*, 90 Cal. 337, 27 Pac. 185.) The other questions and objections appearing in the record, we think, are not well taken.

The judgment is *reversed* and a new trial *ordered*. Costs awarded to appellant.

Sullivan, C. J., and Ailshie, J., concur.

Petition for rehearing denied.