MARY I. CORLISS vs. JAMES A. KEOWN & another.

WILLARD H. CORLISS vs. SAME.

Essex.    November 2, 1910. — December 2, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence*, In use of dangerous horse, Of independent contractor.  *Animal.  Agency.*

If the owner of a horse, who knows that the horse is an unsafe animal to be used in the public streets, lends the horse with his driver for such a use to a person who also knows the dangerous character of the horse, and if, while the horse is being driven in a public square under the direction of the borrower, he runs away and injures a traveller on the highway, who is exercising due care, the injured person has a right of action not only against the owner for his negligence in lending the horse for such a use but also against the borrower for making use of the horse in the public streets, knowing him to be dangerous there.

One who actively participates in a negligent use of dangerous property, with full knowledge of the danger to third persons, cannot avoid liability for an injury caused by such dangerous use by showing that he was not acting in his own behalf but was assisting the negligent owner as his agent or servant.

If an agent of the owner of a horse, known both to the owner and the agent to be unsafe for use in the public streets, proceeds to use the horse in the public streets in conducting the business of the owner, taking that business in charge and directing the driver where and how to go, with a full knowledge of the danger of using the horse in such places, and, if the horse while being so used runs away and injures a person travelling on a public street in the exercise of due care, the agent is liable personally to the person injured.

The owner of a carriage, who has not been negligent in failing to inspect it or in inspecting it negligently, is not liable for an injury resulting from a defect in it unknown to such owner and due to the negligence of a carriage maker, who had repaired the carriage under an independent contract which gave him entire control of the business of making such repairs as he thought necessary, to be paid for at a reasonable price.

KNOWLTON, C. J.   The first of these actions is by a woman to recover for injuries from being struck by a runaway horse while crossing a public street in the city of Lynn, and the second is by her husband to recover damages resulting to him from her injury.   The two defendants are a physician and his mother, who lived in the same house, and were both interested in a hospital maintained by a corporation of which the son was the president and the mother was the treasurer.   The horse and carriage by which the plaintiff in the first case was injured belonged to the son, and were being used by the mother on the day of the injury.   They were in charge of a driver hired by

the son. The plaintiffs contended that the accident was caused in part by the defective condition of the carriage and in part by the bad behavior and dangerous proclivities of the horse. The case was tried before the Chief Justice of the Superior Court without a jury, and he found against the defendant James A. Keown, and in favor of the other defendant. The plaintiffs have brought the cases before us on their exceptions.

The weight of the evidence and the findings of the judge indicate that, on the morning of the accident, Dr. Keown lent his horse and carriage and driver to his mother, to be used for a short time in business of which she had official charge, and that in her official capacity she was the proprietor and manager of the business in which the horse and carriage were then being used. He found expressly that "she had the authority to direct the driver where to go and by what streets and at what rate of speed." In legal effect it seems to have been an ordinary case of the owner of a horse and carriage lending them, with his driver, to another person, to be used by that person in his business. In such a case it is held that, in the absence of an express agreement to the contrary, the care and management of the horse is retained by the owner through his driver, who for that purpose and in that part of the business remains his servant. *Shepard* v. *Jacobs*, 204 Mass. 110, 112. *Delory* v. *Blodgett*, 185 Mass. 126, 129.

But in such a case the ownership of the business in which the horse is used and the responsibility for conducting such a business rest with the person to whom the horse and driver are lent. If he is personally negligent through conducting the business in a careless way, whether by the use of instrumentalities known to him to be dangerous, or otherwise, he is liable for the results of his negligence. He would have no right to accept and use in his business a horse, or anything else, that, by reason of its dangerous proclivities or qualities, would expose others to the probability of injury.

The plaintiffs asked for the following ruling: "If the court shall find that the horse or mare used by the defendant Annie Keown at the time of the accident was an unsafe and dangerous animal for the use to which it was being put by the defendant Annie Keown at said time, and the said Annie Keown, or her

servants, agents or employees knew it or ought to have known it by the exercise of due care, and the plaintiff Mary I. Corliss while on a public street in said Lynn in the exercise of due care became injured by such use, then the defendant Annie Keown is liable to the said plaintiff for her damages by reason of said injuries." In regard to the horse the judge found as follows: "By reason of the disposition to start suddenly, she was an unsafe animal to drive in a public place such as the square where the accident in this case occurred, and of this both defendants had knowledge. The sudden starting of the horse was a cause contributing to the final break of the unfractured portion of the fifth wheel, and on this ground I hold the defendant James Keown liable." He found that the mother was using this horse in driving about the public streets at the time of the accident. Having also found that the horse was an unsafe animal to drive in a public place like the square where the accident happened, and that she knew it, he should have found that she was negligent in using it there, just as he found that her son was negligent in lending it to her for such a use. This is upon the assumption that she was using the horse in her own business, to take money of the corporation as treasurer and deposit it in a bank to the credit of the corporation, and that she asked for the use of the horse for this purpose, all of which was in evidence without contradiction.

Perhaps it ought to be considered whether the use referred to in the request for a ruling could have been of any other kind, that would lead to a different result. The only other view that can be taken of the evidence is that the mother was carrying the money for her son as his agent and representative, and that he was the proprietor of the business in which the horse and carriage were then being used. If that was the fact, she was the person then in charge of the business, and conducting it for the other defendant. After leaving her son, she had the direction and control of the use of the horse, and the driver was subject to her orders as to where and how to go. If, as the judge found, it was a negligent use of the horse by the owner to permit it to be driven on these streets, by reason of the danger of injury to other travellers, it was negligent for her to actively participate in this use of the horse by taking the business in charge and

directing it with full knowledge of its negligent character. One who actively participates in a negligent use of property, with full knowledge of the danger to third persons, is himself negligent, and he cannot avoid liability by showing that he was assisting the negligent owner as his servant or agent. This ruling requested by the plaintiffs should have been given.

We see no other error in the proceedings. The evidence well warranted a finding that neither of the defendants was personally negligent in failing to discover the defect in the carriage after it came from the shop. It also warranted a finding that the wagon maker was not acting as the servant of either of the defendants in repairing the carriage, but was working under an independent contract which gave him entire control of the business of making such repairs as he thought necessary, for which he was to be paid a reasonable price. The judge might find that, after the carriage was left under the agreement, it could not have been taken away, nor the repairer be interfered with, before the completion of the work, without a breach of the contract. An owner of property is not liable for negligence of a mechanic in doing work under such a contract.

*Exceptions sustained.*

*F. E. Shaw,* for the plaintiffs.
*W. W. Pyne,* for the defendants, submitted a brief.