(No. 5745.   January 18, 1932.)

IDAHO APPLE GROWERS ASSOCIATION, Appellant, v. E. N. BROWN, Respondent.

[7 Pac. (2d) 591.]

S. Ben Dunlap, for Appellant.

T. A. Walters and W. A. Stone, for Respondent.

VARIAN, J.— Appellant, a nonprofit co-operative marketing association incorporated under "The Cooperative Marketing Act" (Sess. Laws 1921, chap. 124, p. 298), prosecutes this action as assignee to recover $159.48, with interest, on an account for expenses incurred and merchandise furnished respondent in connection with the marketing of his 1923 fruit crop. The action was originally commenced in the probate court, where appellant recovered judgment. On appeal to the district court, upon both questions of law and fact, general demurrers to the complaint and amended complaint were sustained, resulting in an appeal to this court which held the amended complaint stated a cause of action. (See *Idaho Apple Growers' Assn. v. Brown,* 50 Ida. 34, 293 Pac. 320.) The case was retried in the district court culminating in an instructed verdict for defendant (respondent). Plaintiff appeals from the judgment entered on the verdict. A single question is presented by the record, was the appellant corporation entitled to maintain the present action as assignee of an unincorporated association designated by the same name?

After pleading the facts as to the unincorporated association, respondent's contract with its sales committee, the services rendered and expenses incurred in connection with respondent's 1923 fruit crop, their value, demand and refusal of payment, etc., the complaint alleges: "That thereafter and for a valuable consideration and with notice to and consent of defendant, said committee being duly authorized, assigned said account to this plaintiff; that the plaintiff is now the lawful owner and holder of said account."

It was stipulated that appellant was incorporated on February 16, 1924. The record shows that the last item

of the account sued on is dated January 2, 1924, over a month before appellant was organized. Appellant's right to recover under the pleadings is grounded upon an assignment of the claim of the unincorporated association against respondent. After hearing appellant's evidence, the trial judge directed a verdict in favor of respondent, apparently upon the theory that appellant had failed to establish that the claim against respondent was assigned to it.

On motion by defendant for a directed verdict "the evidence must be viewed in the light most favorable to the plaintiff," and, "when the evidence is such that impartial minds might fairly and reasonably differ in the conclusions to be drawn therefrom, it presents a question of fact for the jury." (*Brown v. Jaeger*, 46 Ida. 680, 271 Pac. 464.) Such instruction "has the same effect as the sustaining of a motion for a nonsuit, and admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, . . . . and that the evidence would not support a verdict even if found for the plaintiff." (*Keane v. Pittsburg Lead Min. Co.*, 17 Ida. 179, 187, 105 Pac. 60, 63.)

The status of the association, at the time the account sued on was incurred, was that of a voluntary association of individuals at common law, there being no express statutory authority for its organization. (5 C. J. 1335.) The record does not disclose it had any articles of association, or by-laws, but clearly indicates that its affairs were administered through committees authorized from time to time by resolution of the members and that a president, vice-president, treasurer, secretary, and directors were elected. The title to the account sued on did not vest in the voluntary association, since it had no separate entity, but in the individual members of the association who controlled, managed, and disposed of its property at their joint pleasure. (5 C. J. 1359.) And on default of respondent the members of the association were entitled to sue him direct. (5 C. J. 1374; *Idaho Apple Growers' Assn. v. Brown, supra.*)

544

The testimony to support the allegations of assignment and ownership of the account may be summarized as follows:

R. H. Weed testified that he was a member of the sales committee and secretary of the unincorporated association; that he was secretary and manager of appellant corporation, and, as such, had in his possession its records, books, and effects; that the books of the unincorporated association came into his hands as its secretary; and on being asked how the books came into the hands of appellant corporation replied, "They were assigned to them." The answer was stricken. He then testified that there was a record made assigning the books of the unincorporated association to appellant, and designated the minutes of a meeting of the members of the unincorporated association held December 18, 1923, as containing said record. The minutes referred to show that a president, vice-president, secretary-treasurer, and board of eight directors were elected at said meeting; that it was "Moved and seconded that the books be audited and turned over to the new officers"; that pursuant to said resolution the books containing the account against respondent were turned over to appellant corporation; that the witness kept the books of the unincorporated association after December 20, 1923; that the items were furnished respondent by the sales committee of the former association.

Q. "Mr. Weed, how did this account that you have been testifying to, come into the possession of the Idaho Apple Growers Association?" A. "It was assigned to them by the Idaho Apple Growers Association." (Answer stricken.)

Q. "Prior to incorporation?" A. "Yes, sir."

The witness then testified that the books and records of the unincorporated association came into his hands as manager of the corporation.

Q. "Was there any writing made at the time you acquired possession of this account?" A. "Just in the minutes is all."

Q. "That is all there is?" A. "Yes, sir."

Q. "Do you know the date of that minute?" A. "I think it was December about the 18th or 20th. I do not remember exactly. It is here (referring to the minute book)."

Q. "Then you mean to say that under that minute these books belonging to the old group were physically turned over to you for your care. Is that what you mean to say?" (Objection overruled.) A. "The books were part of them in my possession at that time, and they were left in my possession and I carried them through and had them while secretary and bookkeeper for the old group and also while secretary and manager for the incorporated association."

Q. "What committee, if any, turned these books over to the new incorporation?" A. "The Sales Committee."

Q. "The Sales Committee of what?" A. "Of the old group of the Idaho Apple Growers Association."

Mr. Weed stated that there was an agreement as to the consideration for the transfer of the account to appellant; that "They paid the liabilities of the group"; that there was action taken by the unincorporated association with reference to this matter.

Q. "It is a matter of record?" A. "It is."

Q. "Will you produce it, please?" A. "Here (Turning to the minute book)."

Q. "Handing you plaintiff's exhibit 'L' . . . . state what it is. . . . . " A. "That is the minutes of the directors of the Idaho Apple Growers Association meeting on April 7, 1924."

He further testified that prior to said date the corporation had in its possession the books of account, including the account against Brown; that they were turned over when the association was incorporated, to said incorporation, by the Sales Committee of the unincorporated association; that there was a minute made of the meeting at which they were turned over; that "There was no minute made of specially turning them over at that meeting of the incorporation; but, they had been ordered turned over on December 18th and were in the possession of the officers" of the incorporation.

Q. "I will ask you if the Sales Committee, pursuant to the action of the Sales Committee of December 18, 1923, did turn over to the new corporation the records and books of the old association including this account against Elmer Brown?" A. "They did."

He further testified that Brown was notified thereof, and the appellant has not parted with the account and still has it in its possession.

Q. "Mr. Weed, state whether or not any written assignment was made of this particular account in question here today." A. "Yes, sir."

Q. "And do you know who made that assignment?" A. "Yes, sir."

Q. "Who did?" A. "The group, the Sales Committee."

The minute entry of April 7, 1924, above referred to, is as follows:

"Moved by Jacob Betts that the Idaho Apple Growers Association, Incorporated, hereby assumes any and all indebtedness that may be due now or at the close of the June pool to Dan Wuille & Company, Incorporated, from the Idaho Apple Growers Association."

Conceding that under some circumstances statements of ownership or possession of property are not merely conclusions of the witness, but statements of fact (see *Jantzen v. Emanuel German Baptist Church*, 27 Okl. 473, Ann. Cas. 1912C, 659, 112 Pac. 1127, where the cases are reviewed), it is quite clear from the testimony of Mr. Weed that he concluded the account in controversy had been assigned to the corporation appellant by reason of the resolution of the members of the unincorporated association of December 18, 1923. At that time the corporation had not been organized, nor was it organized until nearly two months later (February 16, 1924). All that can legitimately be claimed for this resolution is that it authorized an audit of the books of the unincorporated association and directed that they be turned over to the new officers of said unincorporated association elected at that meeting. Nothing more. His statement to the effect that the account was "assigned" to appellant, or that appellant was "the owner of" the account, are conclusions of his based upon his interpretation of said minute entry.

The same is true as to his conclusion that appellant assumed all the indebtedness of the unincorporated association,

because the minute of April 7, 1924, upon which he predicates the assertion, clearly states that the indebtedness due the Dan Wuille Company, only, was assumed by appellant. No other indebtedness.

This court, in *Porter v. Title G. & S. Co.*, 21 Ida. 312, 324, 121 Pac. 548, 552, said:

"In the absence of statutory provisions prescribing the mode of assignment, no particular method or form is necessary to effect a valid assignment of property, claims or debts, so as to defeat the garnishment proceedings by the creditor or assignor. If the intent of the party to effect an assignment be clearly established, it is sufficient, and the assignment may be in the form of an agreement or order or any other instrument which the parties may see fit to use for the purpose."

The books of the unincorporated association, including the account against Brown sued on here, came into Mr. Weed's possession as an employee, agent, or officer, of that association. The mere fact that he later became manager and secretary of the incorporated association does not operate to transfer the account to the corporation. The record is entirely silent, likewise, concerning any attempt by the unincorporated association members, in whom title to the Brown account rested, to authorize the sales committee of the unincorporated association to transfer or assign the account to the corporation appellant. Weed's possession, therefore, was, and still is, the possession of the individual members of the unincorporated association. Therefore, evidence of his possession of the books and accounts sued on is not evidence of possession by appellant corporation.

Judgment affirmed. Costs to respondent.

Lee, C. J., and Budge, Givens and Leeper, JJ., concur.