(No. 6552. September 30, 1938.)

JULIUS ALLAN and ADA ALLAN, Appellants, v. OREGON SHORT LINE RAILROAD COMPANY and A. L. ROSE, Respondents.

[90 Pac. (2d) 707.]

E. H. Hillman and Anderson, Bowen & Anderson, for Appellants.

H. B. Thompson and L. H. Anderson, for Respondents.

MORGAN, J.—This is an action for damages by the parents of Bertram Julius Allan who lost his life in a collision between a truck he was driving and a locomotive drawing a southbound train of respondent Oregon Short Line Railroad Company, driven by respondent Rose, at a railroad crossing about two miles south of St. Anthony. At the end of the introduction of proof the trial judge granted defendants' motion for a directed verdict, which was followed by judgment of dismissal. This appeal is from the judgment, and questions of negligence and contributory negligence, and of the application of the doctrine of last clear chance, are presented.

As a general rule the question of negligence, or contributory negligence, is one for the jury. Where negligence has been established and contributory negligence is relied on, I. C. A., sec. 5–816 applies. It is as follows:

"In all actions hereafter brought for damages for injury to person or property, contributory negligence is a matter of defense, and it is not necessary for the plaintiff to either plead or prove the negative of contributory negligence."

The question of contributory negligence is for the jury and never one of law unless the facts alleged in the complaint, or proven, are reasonably susceptible of no other interpretation than that the conduct of the injured party caused or contributed to his injury and that, because of his negligence and carelessness, he did not act as a reasonably prudent person would have acted under like circumstances. (*Adkins v. Zalasky*, 59 Ida. 292, 81 Pac. (2d) 1090.)

A motion for nonsuit, or directed verdict, admits the truth of all evidence introduced on behalf of plaintiff and he is entitled to have drawn therefrom all reasonable inferences favorable to him. (*Branson v. Northern Pacific Ry.*

*Co.,* 55 Ida. 220, 41 Pac. (2d) 629.) In *Claris v. Oregon Short Line R. R. Co.,* 54 Ida. 568, 573, 33 Pac. (2d) 348, 349, it is said:

"The rule, we think, is that in a motion for nonsuit or directed verdict the evidence must be construed in the light most favorable to plaintiff. It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may be properly ordered or a directed verdict granted. Where the question depends on a state of facts from which different minds may honestly draw different conclusions on that issue the question must be submitted to the jury for determination. Where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury."

With these rules of law in mind, we have carefully examined the evidence. It shows that in the afternoon of March 26, 1934, Vernon Slack, a witness called on behalf of appellants, was traveling northward, in a truck, on the highway adjoining, and parallel to, the railroad. With him in the truck was J. W. Farrimond, a witness called on behalf of respondents. As they approached the intersection of the railroad, which runs in a northerly and southerly direction, and a county road, which runs in an easterly and westerly direction, they saw the truck, in charge of Bertram Julius Allan, in the county road, headed west, pulled up close to the railroad track. Allan got out of the truck on the left side, walked around in front of it to the right side "and looked like he was looking at his tires, and then walked back and looked at the tires on the side that he got out of; and then he got into the truck, and started up to go across." The truck passed over the railroad track to the west and just as it got across, the train hit it just behind the hind wheel. Slack testified he did not remember of hearing a whistle but saw three blasts of steam coming from the top of the engine when it was close to the crossing; that he did not remember of hearing the engine bell ring. He further testified that when he saw the truck standing on the east side of the railroad track it was probably 8 feet, more or less, from the rail. He was uncertain as to the distance the train was from the crossing when Allan started across with

the truck. In his testimony, he placed it at from 150 feet to, ''maybe a thousand feet, or maybe not that far.''

Farrimond testified he noticed the train leaving St. Anthony when he was probably half a mile down the highway south of the crossing; that while the truck was standing it was 10 or 12 feet from the east rail of the railroad track; that he saw the locomotive at the time the truck started up; that it was probably a couple of hundred or three hundred feet from the crossing; that he heard the whistle when the train was about half a mile up the track and did not hear it again before it got to the crossing; that he thought he would have heard it if it had whistled; that he did not hear the bell ringing before the locomotive got to the crossing, but did hear it when it went by the truck; that he thought he was in position to have heard it had it been ringing; that he would not undertake to say the bell was not ringing before it reached the crossing.

The fireman on the locomotive, called as a witness on behalf of respondents, testified the bell was ringing when the train left the station at St. Anthony; that it was an automatic ringer and continued to ring until after the accident; that the engineer started to sound the whistle about the time he passed the whistle board, a quarter of a mile from the crossing; that the signal consisted of two long and two short blasts, so spaced that the last one was sounded about the time the locomotive reached the crossing. This witness testified he saw the truck on the road when he was about a half or three-quarters of a mile from it; that it was standing 12 or 15 feet from the east rail; that he saw the driver go around from the front and get into the truck; that the truck started ahead when the locomotive was 150 or 200 feet from the crossing and he immediately called to the engineer ''to hold it.'' He testified:

''A. Well, when I hollered for him to hold her, I heard the air brake go into emergency by the escaping of the air out through the brake valve.

''Q. Where would you say the brakes first set and took hold?

''A. Well, I judge about 75 or 100 feet from the crossing I felt the engine take hold.

"Q. And how far beyond the crossing was the engine when it came to a stop?

"A. About two and a half telegraph poles."

The engineer corroborated the fireman's testimony with respect to the giving of the crossing signals by sounding the whistle and ringing the bell. He also testified that when the train got within a half or three-quarters of a mile from the crossing he saw the truck standing on the east side of the track somewhere between 10 and 20 feet from the east rail. The engineer was seated on the right hand, or west side, of the cab and as the train approached the crossing the front of the locomotive obscured his view of the truck so that he did not see it start across the track. He testified:

"When I was whistling the third whistle the fireman hollered to me to hold it. I let loose of the whistle cord, and closed the throttle, and threw her into emergency, and turned on the sand; and then I blew the last whistle just as we were going onto the crossing. . . . .

"Q. Upon the fireman calling to you, and you doing what you said you did, what was the brake response?

"A. Well, within about 55 feet of the crossing, I could feel the brakes take hold.

"Q. What was the most effective thing that you could do under the circumstances to stop or retard the speed of the train?

"A. Set the brakes in emergency.

"Q. Was there anything you know of that you might have done, that you didn't do, to quickly and effectively retard the speed of the train?

"A. No, sir, not anything."

A section crew, working within hearing distance of the whistle board, corroborated the fireman and the engineer with respect to the giving of the crossing signal.

There is some evidence that weeds were growing along the right of way north of the crossing and on the east side of the track. There is also testimony to the effect that willow brush was piled between the track and the east right-of-way fence a short distance north of the crossing. The testimony about the brush pile is disputed. The weeds were not high

enough and the pile of brush, if one was there, was not large enough to have obscured the view, of a person situated as Allan was, of the train as it approached the crossing.

I. C. A., sec. 60–412, requires that a locomotive bell be rung at a distance of at least eighty rods from the place where a railroad crosses a street, road or highway, and be kept ringing until it has crossed the same, or a whistle must be sounded, except in cities, at a like distance, and be kept sounding at intervals until the street, highway or road is crossed. Failure to conform to that section of the statute constitutes negligence. (*Wheeler v. Oregon R. R. etc. Co.*, 16 Ida. 375, 102 Pac. 347; *Judd v. Oregon Short Line R. R. Co.*, 55 Ida. 461, 44 Pac. (2d) 291.)

The testimony was sufficient to have taken the case to the jury on the question of negligence of respondents, consisting of failure to give the statutory warning signals of the approach of the train to the crossing, had contributory negligence not been established so clearly as to bring the case within the rule above stated. In other words, had there been conflict in the evidence as to contributory negligence on Allan's part, or if the evidence had been reasonably susceptible of any other interpretation than that his conduct caused, or contributed to his injury the case should have gone to the jury.

The record conclusively shows that Allan, who was between sixteen and seventeen years old at the time of the accident, drove the truck in front of the train when he saw, or by the exercise of reasonable care, would have seen and known that, by so doing, he was endangering his life. The undisputed facts support no other theory than that his injury and death were due to his negligence. The evidence also conclusively shows that when he started across the track the fireman immediately gave the alarm to the engineer who did everything in his power to avoid the accident. Applying the rules of law, heretofore stated, to these facts, we are convinced the judgment should be affirmed, and it is so ordered. Costs are awarded to respondents.

Holden, C. J., and Ailshie, Budge and Givens, JJ., concur.

ON REHEARING.

(May 24, 1939.)

MORGAN, J.—The fireman after testifying, as shown in the original opinion, that the truck was standing 12 or 15 feet from the east rail when the locomotive was about a half or three-quarters of a mile from it, was cross-examined and testified repeatedly to the same effect. During his cross-examination he testified further, that the boy started the truck across the track within a second or two after he got in it. He was asked:

"Q. And at the time that he got in you were about 2,000 feet to the north?

"A. When he got into the truck; yes, sir."

It is urged that it was the duty of the fireman to warn the engineer, as soon as he saw the truck start forward in front of the approaching train, and that the case should have gone to the jury for a decision as to whether he had time to prevent the accident, by giving the warning, when the truck started.

The statement of the fireman to the effect that the truck was started forward within a second or two after the boy got in it, and that the train was about 2,000 feet to the north of the crossing at that time, is contradictory of his other testimony on that point; is clearly erroneous, and due to the confusion of the witness. Had the truck been started forward when the train was that distance from the crossing it would have been safely across the track and some distance from it when the locomotive reached that point.

A question presented on rehearing is as to whether these statements of the fireman on cross-examination, which are contradictory of his other testimony and of that of all other witnesses who testified on that point, were sufficient to take the case to the jury. We find they were not.

In weighing the testimony of a witness it must be considered as a whole, and a fragment thereof, inconsistent with his other testimony and manifestly given because of misunderstanding or confusion, will not support an inference which will take the case to the jury.

The rule applicable to motions for nonsuits applies to motions for directed verdicts.

"In each case, the party making the motion admits the truth of his adversary's evidence, and his adversary is entitled to the benefit of every inference favorable to him which may be drawn legitimately from any evidence before the court at the time the motion is made." (*Manion v. Waybright,* 59 Ida. 643, 86 Pac. (2d) 181, 186.)

In *Deichert v. Euerby,* 54 Ida. 14, 20, 27 Pac. (2d) 981, 983, we said:

"In determining whether or not a nonsuit should be granted, the evidence must be considered as a whole, and the action of the court is not to be based on isolated portions of it."

In *Connor v. Johnson,* 132 Cal. App. 449, 22 Pac. (2d) 760, 761, it is said:

"When the testimony, as a whole, is fairly considered, and not one small isolated portion of it alone considered, we think that but one conclusion can be reasonably drawn from it. We are equally satisfied that the whole of it must be considered in passing upon a motion for a nonsuit. . . . . "

See, also, *Masten v. Griffing,* 33 Cal. 111; *Brown v. Chevrolet Motor Co.,* 39 Cal. App. 738, 179 Pac. 697; *Nulsen v. Nulsen,* 3 Cal. App. (2d) 407, 39 Pac. (2d) 509; *Brosius v. Weber,* 149 Mo. App. 181, 130 S. W. 134.

Appellants insist I. C. A., sec. 60-412, eliminates contributory negligence as a defense in actions for damages in railroad crossing cases if the railroad company has failed to conform to the requirements of that section, which provides:

"A bell of at least twenty pounds weight must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road or highway; or an adequate steam, air, electric or other similar whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same, under a penalty of $100.00 for every neglect, to be paid by the corporation operating the railroad, which may be recovered in an action prosecuted by the prosecuting attorney of the

proper county, for the use of the state. The corporation is also liable for all damages sustained by any person, and caused by its locomotives, trains or cars, when the provisions of this section are not complied with.''

That section is so nearly an exact copy of section 486 of the Civil Code of California as to lead to the conclusion that our legislature adopted the California provision. It was enacted in California in 1872 and in Idaho in 1887. Prior to the enactment in Idaho the section had been construed by the Supreme Court of California in *Meeks v. Southern Pac. R. R. Co.,* 52 Cal. 602, 604, wherein it is said:

''The 486th section of the Civil Code, providing that a railroad corporation shall be liable for all damages sustained by any person and caused by the locomotive of the corporation, when a bell is not sounded or a whistle blown, as directed by that section, does not abrogate the doctrine of contributory negligence, or operate to give a right of action where the negligence of the plaintiff, if an adult, or if an infant, as here, the negligence of the parent or person standing *in loco parentis,* materially and proximately contributed to the injury.''

It is the established rule in Idaho that where a provision has been adopted by our legislature from the statutes of another state, which had been construed by the courts of that state, it will be assumed that the construction which had been placed upon it was also adopted. (*Mundell v. Swedlund,* 58 Ida. 209, 223, 71 Pac. (2d) 434, 441, and cases therein cited on this point.)

Furthermore, this court had before it, in *Wheeler v. Oregon R. R. etc. Co.,* 16 Ida. 375, 393, 395, 102 Pac. 347, 353, 354, the contention now made by appellants, and disposed of it as follows:

''It will be seen from this section that the failure to ring a bell or blow a whistle, when approaching a street crossing or roadway, makes the company liable for damages sustained by any person and caused by a locomotive, train or cars. This statute does not rest the liability for damages upon the contingency that the injury sustained was the result of the failure to ring the bell or blow the whistle, but declares absolutely that where the bell is not rung or the whistle blown

and damages are sustained, the company is liable. This section, no doubt, was enacted for the purpose of requiring a railroad company operating a train over a track, crossing a street or public highway, to give a signal of warning of the approach of such train, and to thereby notify persons intending to pass over the same of the approach of such train. It prescribes a penalty for a failure to comply with its provisions, and makes the company liable for all damages sustained. While this section provides that a railway is liable for all damages sustained by any person caused by a locomotive, train or cars, when a bell is not sounded or a whistle blown, still it does not abrogate the doctrine of contributory negligence or operate to give a right of action where the negligence of the plaintiff contributed to, and was the proximate cause of the injury. (Authorities cited) . . . .

"It is true, however, that the authorities on this question are not uniform, but we believe that the better reason is with the proposition that the failure of the railroad company to comply with the statute is negligence *per se,* negligence in law. Under this statute the plaintiff makes his case by showing the negligence or noncompliance with the law, and the injury; but this statute does not, however, deny the right to the defendant to show that the plaintiff is not entitled to recover because of contributory negligence on the part of the plaintiff which was the proximate cause or one of the proximate causes of the injury. This rule recognizes the right of a defendant charged with negligence to defend upon the ground of nonliability by reason of contributory negligence on the part of the plaintiff."

That decision was rendered thirty years ago and has been followed in Idaho since it was written. The legislature has not seen fit to change the rule therein expressed, nor do we.

We adhere to the decision heretofore rendered herein.

Budge and Givens, JJ., concur.

Holden, J., dissents.

Ailshie, C. J., sat with the court at the rehearing but did not participate in the decision.