245 P.2d 400

NISSULA v. SOUTHERN IDAHO TIMBER
PROTECTIVE ASS'N.

No. 7816.

Supreme Court of Idaho.

June 11, 1952.

Richards, Haga & Eberle, Boise, for respondent.

Fred M. Taylor, and Moffatt & O'Leary, Boise, for appellant.

TAYLOR, Justice. ·

In August, 1949, the plaintiff (appellant) was the owner of a D–7 Caterpillar tractor, which he was using in logging operations. On August 28th a forest fire was reported in progress on West Mountain near Cascade, Idaho, and that men and equipment were wanted to fight the fire. The fire was in territory under the jurisdiction of the defendant, and defendant was in charge of operations against the fire. Plaintiff volunteered the use of his men and equipment and was directed by an agent of the defendant to take his tractor to the fire. The tractor was operated by plaintiff's brother, who had been employed by the plaintiff in that capacity for some three years, but had never before operated a tractor in fighting fire. The defendant compensated plaintiff for the use of the tractor on the basis of an agreed rate per hour for the tractor and operator as a unit, with fuel, oil, grease, and expenses incident to its operation, furnished by the owner.

On the morning of August 29th, plaintiff, with his tractor and operator, reported at the scene of the fire where one Art Roberts, chief fire warden for the defendant, directed him to take his tractor to the south side of the fire and report to Monte Cross, deputy fire warden, in charge in that area. There Cross directed that the tractor be taken up on the side of the mountain above the fire to push the brush back and dig a trench to prevent the spreading of the fire. The plaintiff followed the tractor upon the mountainside and observing that "it was pretty rocky up there and 'stumpy' and a lot of brush and steep," stopped the driver and went down and complained to Warden Roberts that it was not a fit place for the tractor to operate. Roberts agreed to this objection and the tractor was brought down from the hill and put to work skidding and scattering a deck of logs which had been piled at the side of a logging road. Under the direction of Roberts, plaintiff went to another sector of the fire to assist in directing the fire fighters, leaving the caterpillar and operator under and subject to the orders of Cross. While the log skidding was going on, Cross observed that the fire increased in intensity in an area on the mountain, a distance (150′ to 200′) from the area

which had previously been determined too rough and steep for the operation of the tractor. Cross then directed the fire fighters to go to that fire line. There is a conflict in the evidence as to whether Cross again directed the operator to take the caterpillar up on the mountain or whether that direction was given by one Coonrod, who was a fire control staff officer of the Boise National Forest, and present at the fire pursuant to arrangements for cooperation between the Forest Service and the defendant. In either event the tractor was again taken up on the side-hill and while engaged in clearing brush and pushing dirt pursuant to directions given by Cross, it became lodged against a stump and exposed to a sudden flare-up of the fire. The operator tried to back the tractor away and testified he could not do so because it was too steep. The fire became so intense in the immediate vicinity that the operator was driven from the tractor. Those present were unable to hold the fire in check and the tractor was severely damaged by the fire.

Plaintiff brought this action to recover the damage to the tractor in the sum of $5,358.55, and $6,048 for loss of the use of the tractor during the time it was being repaired. Plaintiff bases his right to recover upon the alleged negligence of Cross in directing the operator of the tractor to go back up on the mountain where he knew it would be placed in a position where it could be damaged by the spreading fire, and contrary to the objections of the plaintiff and

the understanding had between plaintiff and Chief Warden Roberts.

The defendant admitted the employment of the tractor and driver, as alleged; denied any negligence on its part; and alleged negligence on the part of the plaintiff and that any resulting damages were caused by the plaintiff.

At the close of the evidence on both sides the defendant moved for a directed verdict. The motion was urged upon the ground that there was no proof of negligence on the part of the defendant; or that the area where the tractor was damaged was dangerous over and above the ordinary dangers and risks incidental to the fighting of fire; and that the risks were assumed by the plaintiff in volunteering his equipment and driver for the service; that the driver of the tractor was the employee of the plaintiff and that the damage was caused by the negligence of the driver.

The motion was granted and from the resulting judgment in favor of the defendant the plaintiff brings this appeal.

The granting of the motion and the entry of judgment thereon are assigned as error. The sole question presented is as to whether or not the evidence was sufficient to entitle plaintiff to have the issues determined by the jury.

In determining this question we are, of course, guided by the rule that on motion by defendant for a directed verdict, the evidence must be viewed in the light

most favorable to the plaintiff. And, where reasonable minds might differ as to the inferences to be drawn, or the conclusion to be reached, from the evidence, it becomes a question of fact for the jury. McCornick & Co., Bankers v. Tolmie Bros., 42 Idaho 1, 243 P. 355; Brown v. Jaeger, 46 Idaho 680, 271 P. 464; Idaho Apple Growers Ass'n v. Brown, 51 Idaho 540, 7 P.2d 591; Claris v. Oregon Short Line R. Co., 54 Idaho 568, 33 P.2d 348; Manion v. Waybright, 59 Idaho 643, 86 P.2d 181; Dept. of Finance of State v. Union Pacific R.R. Co., 61 Idaho 484, 104 P.2d 1110; Hobbs v. Union Pacific R.R. Co., 62 Idaho 58, 108 P.2d 841; Carson v. Talbot, 64 Idaho 198, 129 P.2d 901.

A nonsuit is proper only where there is an entire absence of testimony tending to establish the plaintiff's case. Keane v. Pittsburg Lead M. Co., 17 Idaho 179, 105 P. 60; Allan v. Oregon Short Line R. Co., 60 Idaho 267, 90 P.2d 707.

On the other hand, if the evidence were such that reasonable minds could not differ and a verdict for the plaintiff could not be upheld, then a nonsuit or directed verdict should be granted. Hargis v. Paulsen, 30 Idaho 571, 166 P. 264; Bowman v. Bohney, 36 Idaho 162, 210 P. 135; Allan v. Oregon Short Line R. Co., 60 Idaho 267, 90 P.2d 707; Stearns v. Graves, 62 Idaho 312, 111 P.2d 882; U. S. v. Alger, 9 Cir., 68 F.2d 592; Russell v. Oregon Short Line R. Co., 9 Cir., 155 F. 22.

Plaintiff urges that the operator of the tractor, under the "loaned servant rule", became the servant of the defendant during the operation of the tractor at the fire and that any negligence on his part while so engaged is to be imputed to the defendant. Citing: B. & B. Bldg. Material Co. v. Winston Bros. Co., 158 Wash. 130, 290 P. 839; McHugh v. King County, 14 Wash. 2d 441, 128 P.2d 504; Denton v. Yazoo & Miss. Valley R. Co., 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310.

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

"Comment:

"a. * * *

"b. Inference that original service continues. In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it.

"c. Factors to be considered. A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of em-

ployment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues." 1 Restatement of Agency § 227.

Here the operator was selected and paid by plaintiff. The plaintiff retained the right to discharge him and substitute another. At least no inference can be drawn from the record that the defendant had the right to replace him. Under these circumstances, as to his acts in handling and operating the tractor, he remained the servant of the owner. And as to such acts this relationship is not altered by the fact that he was subject to the control of the defendant as to where to go and what work to do. Stewart v. Calif. Imp. Co., 131 Cal. 125, 63 P. 177, 724, 52 L.R.A. 205; Lowell v. Harris, 24 Cal.App.2d 70, 74 P.2d 551; Entremont v. Whitsell, 13 Cal.2d 290, 89

P.2d 392; Shaff v. Baldwin, 107 Cal.App. 2d 81, 236 P.2d 634; Clarke v. Bohemian Breweries, 7 Wash.2d 487, 110 P.2d 197; Garner v. Martin, 155 Kan. 12, 122 P.2d 735; Landis v. McGowan, 114 Colo. 355, 165 P.2d 180; Hodges v. Holding, 204 Okl. 327, 229 P.2d 555; Ash v. Century Lumber Co., 153 Iowa 523, 133 N.W. 888, 38 L.R.A., N.S., 973; Meyers v. Tri-State Auto. Co., 121 Minn. 68, 140 N.W. 184, 44 L.R.A.,N.S., 113; Corliss v. Keown, 207 Mass. 149, 93 N.E. 143; Kellogg v. Church Charity Foundation, 203 N.Y. 191, 96 N.E. 406, 38 L.R.A.,N.S., 481; Morris v. Trudo, 83 Vt. 44, 74 A. 387, 25 L.R.A.,N.S., 33; Wilbur v. Forgione & Romano Co., 109 Me. 521, 85 A. 48; Goldwyn v. Coast Cities Coaches, 129 N.J.L. 501, 30 A.2d 295; Pennsylvania Smelting & Refining Co. v. Duffin, 363 Pa. 564, 70 A.2d 270; Vasligato v. Yellow Pine Co., 158 App.Div. 551, 143 N.Y.S. 817; Hanatsek v. Wilson, 161 App.Div. 634, 146 N.Y.S. 1016; Crockett v. U. S., 4 Cir., 116 F.2d 646; Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 180 F.2d 79; Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480.

Most of the cases cited concern actions for injury to third persons or to property of others. If such is a sound rule in those cases, it is much more so in a case where the negligence or want of skill of the operator, chosen by the owner and by him intrusted with the care and operation of the machine, results in damage to the machine itself. When the plaintiff sent his

own operator along with his tractor into the service of the defendant, he represented his employee to be a competent and prudent operator. It was proper for the trial court to conclude that the defendant is not liable for any negligence or incompetence on the part of the operator in handling the tractor. Therefore, if the operator was negligent in that regard and such negligence was the proximate or contributing proximate cause of the injury, the plaintiff would not be entitled to recover.

Where the evidence is conflicting and leaves in doubt the question as to whose servant the operator is as to the particular acts relied on, the issue then becomes one of fact for the jury. Moseman v. L. M. Penwell Undertaking Co., 151 Kan. 610, 100 P.2d 669; Beitz v. Hereford, 169 Kan. 556, 220 P.2d 135; Baltimore Transit Co. v. State, 184 Md. 250, 40 A.2d 678; American Tel. & Tel. Co. v. Ohio Valley Sand Co., 131 W.Va. 736, 50 S.E.2d 884. Here the evidence as to such issue is not conflicting.

The evidence as to negligence, however, is conflicting. The plaintiff and his brother (the driver of the tractor) testified that the mountainside was too steep and rough for the safe operation of the machine. Plaintiff's witnesses Turner and Rowland testified that it was steep, but they did not know what would be too steep for such a tractor. Defense witnesses Shaw, Roberts, Farrell, Koskella, and Coonrod testified that it was not too steep or otherwise unsafe for the tractor to operate, beyond the usual and ordinary hazards attendant upon the task of fighting a forest fire. There was some evidence elicited by the defense that the side-hill where the tractor was damaged was not as steep or rocky as in the area where it was first tried. To the contrary, other witnesses testified it was about the same as to incline and although less rocky, there were rocks, stumps and brush. As to the first area, defendant's own witness, Cross, testified, "I saw that it was unfit for use of the cat in there." The operator testified that when he took the cat up the second time he was required to hitch the winch line to a stump in order to hold it where he wanted it while he turned around to come back down toward the fire. In this he was corroborated by defendant's witness Cross, who said he went up and "helped him." The witness Turner testified that the tractor "slid into a stump."

■■ From this it is apparent that there was not an entire want of evidence to support the plaintiff's case. The negligence charged was the placing of the tractor in a hazardous position contrary to the arrangement between the plaintiff and Roberts, as a result of which the damage occurred. The operator had been directed to take orders from Cross and there is evidence that in going up on the hillside the second time and in pushing brush and dirt at the point where the tractor became stalled, he acted upon specific directions from Cross. As to such acts he was under the control of, and was

as to such acts the servant of, the defendant, although at the same time he was the servant of the owner in the manipulation of the machine itself. 1 Restatement of Agency § 227. So if, under the circumstances, it was negligent to direct the operator to take the tractor up on the hillside and to push brush and dirt in the manner done, and the damage proximately resulted therefrom, then the defendant would be liable. These were questions of fact for the jury.

■■ As to defendant's contention that the risks incident to this use of the tractor were assumed by the plaintiff, it need only be said that one does not assume risks which he does not consent to assume and which are imposed upon him against his will. 56 C. J.S., Master & Servant, § 357; 35 Am.Jur., Master & Servant, § 320. The plaintiff protested against the use of his tractor upon the steep hillside and testified he had an understanding with Roberts that it would not be so used. As to whether that applied to the area where the tractor was burned, the evidence is not clear, but it is sufficient to say that it does not justify the conclusion that the plaintiff assumed the risks involved.

The evidence as to negligence of the operator was to the effect that he permitted the winch line or cable to toil, or remain, out behind the tractor in coming down the hill toward the fire, and that when he undertook to back away from the stump, this line became entangled in the tracks of the machine and it was this line which prevented the operator from backing the tractor away from the fire. Also, that if the line had not been thus "fouled up", it could have been used to pull the tractor to safety, and that it was this negligence or incompetence on the part of the operator which proximately caused the damage. As to this, the operator testified that he reeled the line in after using it to turn the tractor around above the fire; that at a point about ten feet from where the tractor struck the stump he turned out around a rock and in so doing broke the rod which actuates the brake on the winch drum and that this released the line; and "I guess I didn't notice that—and when I turned the cat it broke that rod in there and I didn't pay no attention, I just started to try to back up." This, and other facts mentioned, presented conflicting evidence as to whether the operator was negligent or incompetent and, if so, whether such negligence or incompetence was the proximate cause or a contributing proximate cause of the damage. Under the circumstances, these were questions for the jury.

The judgment is reversed with directions to grant a new trial.

Costs to appellant.

PORTER, THOMAS, and KEETON, JJ., and ANDERSON, District Judge, concur.