[No. 28518. Department One. August 6, 1942.]

FRANK J. MCHUGH *et al., Appellants,* v. KING COUNTY *et al., Respondents.*[1]

*Padden & Moriarty,* for appellants.

*B. Gray Warner, Wm. R. Bell,* and *Thor C. Tollefson,* for respondents.

SIMPSON, J.—This action was instituted by plaintiffs to secure a judgment against defendants for damages to a gas shovel caused by the action of defendants. The complaint charges that April 20, 1936, plaintiff Frank McHugh was the owner of a one and one-half yard Koehring gas shovel; that at that time the shovel was in the rightful possession of plaintiff L. J. Dowell who, with the consent of the owner, rented it to defendants; that by the terms of the lease agreement the shovel

[1]Reported in 128 P. (2d) 504.

together with a shovel operator was let to defendants for a consideration of $6.40 per hour; that it was agreed that at the expiration of the contract defendants would deliver back to plaintiffs the shovel in a good condition, ordinary wear and tear excepted. It was further alleged that the shovel was returned in a badly damaged condition and that the condition was not occasioned by ordinary wear and tear. The amount of damages asked for was the sum of $10,765.19.·

In their answer, defendants admitted the making of the agreement. They alleged, however, that they did not agree to return the shovel in good condition. Other allegations of the answer indicated that the shovel was at all times in the exclusive control of plaintiffs, both as to maintenance and operation; that the shovel was used at all times under circumstances, conditions, and locations selected by the operator; and that the damages done to the gas shovel were caused and occasioned wholly and solely by reason of the negligence of the operator employed by plaintiffs.

The reply put in issue the allegations of the answer.

The case was tried to the court sitting without a jury. At its conclusion, the trial court orally announced that he would find for plaintiffs and that the amount of damages occasioned by injury to the shovel was in the sum of eight thousand seven hundred fifty dollars. Thereafter, the court took the case under advisement and then filed a written memorandum opinion in which it concluded that plaintiffs were not entitled to recover. Findings of fact and conclusions of law were then made, and a judgment dismissing the action was entered. Plaintiffs have appealed.

The assignments of error, fourteen in number, attack the findings made by the trial court and its judgment of dismissal.

The facts as disclosed by the record may be sum-

marized as follows: During the month of April, 1936, respondents, acting together under the provisions of Rem. Rev. Stat., §§ 9651 to 9663 [P. C. §§ 5948 to 5959-1], inclusive, were engaged in certain work designed to control the flood waters of the White and Puyallup rivers. In connection with that work, they were removing rock from a quarry situated in Pierce county. The rock was removed by means of gas propelled power shovels which took the rock from the base of the quarry and dumped it into trucks to be hauled away. April 20, 1936, respondents hired the gas shovel owned by appellants. A requisition reading as follows was issued to appellant Dowell:

"Issued to L. J. Dowell,
    1437 Elliott Ave. Seattle, Wash

"Rental of one 1½ yard Koehring Shovel to be used at a rock quarry on the Orting-Kapowsin Road on W P A project No. O P 918.

"Owner to furnish with shovel, operator, gas, oils, grease and all necessary lines and spare parts to maintain the shovel in continuous operation in the quarry.

"It is understood that the shovel will be maintained in good operating condition.

"In the event it is necessary to shut the shovel down during regular operating hours for 30 minutes or longer it is understood that the owner will be docked for the time not operating.

"The Inter-County River Improvement agrees to pay for this service at the rate of $6.40 per hour for all hours actually working, after the shovel begins and as long as satisfactory service is being given until project is closed down. The Inter-County River Improvement will move the shovel from its present storage on Elliott Ave., Seattle to the quarry and return upon completion of the job.

"Payment to be made per hours worked at the end of each month.

Inter-County River Improvement
B. P. Thomas
B. P. Thomas        Chief Engineer"

Thereafter respondents moved the shovel to the quarry, where it was operated until wrecked by a large rock falling upon it June 24, 1936. Later, respondents returned the shovel to appellants in its wrecked condition.

The method of operation in the quarry is best explained by the trial court, in the following language:

"In order to obtain the rock at the quarry heavy shots of blasting powder were placed in the face of the rock and exploded. The debris occasioned by such shots sought an angle of repose along the base of the cliff from which the rock was procured. In this shattered mass were rocks of various sizes and other material. The improvement required certain types of material which may be designated as small, intermediate and large rocks. This material was hauled from the quarry by trucks to designated points along the river. The material was loaded at the quarry upon the trucks by means of a power shovel. The method of loading was to have the shovel pick up the rocks at the toe of the slope and, by a constant removal of the toe, and agitation of the loose mass, cause the material to cascade down the slope to the floor of the quarry, where it would be available to the shovel for loading."

A man named Baker, called the pit boss, supervised the operation in the quarry. It was his duty to see that the trucks were loaded with the kind of material required by those placing it in or along the sides of the river. In performing that duty, he from time to time indicated to the shovel runner the point along the face of the quarry where the work should be done. On the day of the accident, Baker ordered the shovel runner to excavate from around a large rock or boulder, the base of which rested several feet above the floor of the quarry.

The testimony of the shovel runner and others was to the effect that he complained to the pit man of the fact that the boulder was liable to fall. Notwithstanding

the apparent danger, the pit man ordered the work to proceed as indicated. A short time after the work started, large portions of rock fell upon the shovel and damaged it to a considerable extent.

Appellant contends that the shovel runner was their servant, loaned to respondents for the purpose of doing the work in the quarry, that the servant was under the control and direction of respondents and therefore became their servant for whose acts they are responsible. Respondents contend that they were bailees for hire and were responsible for reasonable care; that the work was essentially dangerous and known to be so by appellants; and that the shovel runner, as the agent or servant of appellants, assumed the risk of the known hazard.

The briefs submitted by counsel contain many arguments upon various questions there presented, all of which we have considered. We conclude, however, that the facts present in this case bring it squarely within the loaned servant rule as heretofore announced by this court. He who controls the actions and directs the work or action of another is responsible for the acts of the one to whom the instruction is given.

"But the law is well established that when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." *Wiest v. Coal Creek R. Co.*, 42 Wash. 176, 84 Pac. 725.

The above statement was approved in *Christiansen v. McLellan*, 74 Wash. 318, 133 Pac. 434.

The facts in *B. & B. Building Material Co. v. Winston Brothers Co.*, 158 Wash. 130, 290 Pac. 839, are in every essential respect like those present in the case at bar. In that case, Winston Brothers Company was engaged

in the work of constructing a power plant on the Skagit river. A portion of the work consisted of the removal of rock from places on the bank and in the bed of the river. The material preparatory to removal was loosened by blasting. It was gathered up by a steam shovel and loaded into dump trucks and then carried to a dumping ground for deposit. The dumping ground was on the top of a steep declivity. When the trucks reached the declivity, they were turned and backed to its edge and thence by means of a hoisting gear the front end of the truck was raised which caused the materials to slide from its rear end and fall over the declivity. The defendant in that case hired a truck from plaintiff at an agreed price per hour which included the wages of the truck driver who was furnished by the owner of the truck. It was agreed that the defendant would at the end of the contract return the truck to the plaintiff.

The defendant maintained an employee at the dump who directed the drivers of the trucks to the particular place on the dump for unloading. At one time the truck owned by plaintiff received a load of material and proceeded to the dump. When the driver reached the dump the attendant was not there. He placed the truck in a position to dump the load by backing it toward the declivity and stopped it for the purpose of unloading. When the driver reached for the lever used to put the hoisting gear in motion, the truck rolled down the embankment and was destroyed. The place of dumping was designated by the defendant and the truck was engaged in dumping loads, together with several other trucks belonging to the defendant. This court held that the work was under the control of the defendant and that the driver of the truck was directed by the defendant and its servant relative to the place where the dumping should be done and that that fact

made the driver the agent and servant of the defendant under the loaned servant rule.

See, also, *Olson v. Veness,* 105 Wash. 599, 178 Pac. 822; *Macale v. Lynch,* 110 Wash. 444, 188 Pac. 517; *Walter v. Everett School Dist. No. 24,* 195 Wash. 45, 79 P. (2d) 689.

In the instant case, the shovel and its operator, the shovel runner, were hired by respondents to perform certain work. During the time the shovel was being operated, it was in the exclusive possession of respondents, whose employee exercised entire control of its operations. Under those circumstances, we hold that the shovel runner and the pit boss who gave the orders to him were the servants of respondents, that as such servants they negligently caused the damage to the shovel, and that respondents must be held liable for the damages.

We have considered the record relative to the amount of damages to the gas shovel, and have concluded that the amount fixed by the trial court in its oral opinion was the correct amount to be awarded plaintiffs for the damage to their shovel.

The judgment will be reversed, with instructions to the trial court to enter judgment in favor of appellants in the sum of eight thousand seven hundred fifty dollars.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.