[No. 46021. En Banc. May 1, 1980.]

AMERICAN SIGN & INDICATOR CORPORATION, *Appellant,*
v. THE STATE OF WASHINGTON,
*Respondent.*

*Paine, Lowe, Coffin, Herman & O'Kelly, John R. Quinlan,* and *Gary A. Dahlke,* for appellant.

*Slade Gorton, Attorney General,* and *William B. Collins, Assistant,* for respondent.

HOROWITZ, J.—This case considers the appropriateness of the Department of Revenue's characterization of a taxpayer corporation as a "manufacturer" rather than a "retailer" for purposes of the state business and occupation tax. RCW 82.04.

American Sign and Indicator Corporation (AS&I) appeals from judgment in favor of the State after trial of its taxpayer's suit under RCW 82.32.180 in Thurston County Superior Court for refund of $76,900.32 in additional business and occupation taxes paid by AS&I as a result of the Department's characterization of its taxpaying status. Certification of the appeal from the Court of Appeals, Division One, was accepted in this court. RCW 2.06.030; RAP 4.2.

For the reasons set out below, we now affirm the trial court's denial of the taxpayer's claim for relief.

## I

AS&I is a Washington corporation with offices in Spokane. AS&I is the sole shareholder in and exercises control over two subsidiary corporations—Williams Brothers Manufacturing Company (Williams) and Electronic Products Manufacturing Company (EPMCO). The three companies operate out of the same building and have common officers.

The tax liability of a corporation must be considered without regard to its relationship to a parent or subsidiary company or to the existence of common officers, employees, facilities, or stock ownership. *Rena–Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 463 P.2d 622 (1970); WAC 458–20–203. However, in this case, the taxpayer's liability does depend on the *business* relationship it has with its two subsidiaries, Williams and EPMCO.

AS&I sells alternating time and temperature displays, such as those often found in bank signs, to customers throughout the nation. Williams manufactures the outer shells and structures of these signs and crates and loads them for shipment after final assembly.

EPMCO builds the electronic components which display the time and temperature in the signs. Williams and EPMCO provide displays only for AS&I. The two companies rent space from the parent company AS&I.

Only manual unionized laborers are employed by Williams and EPMCO; management and purchasing personnel are employed by AS&I. There was testimony that this personnel division was effected to prevent unionization of AS&I employees, to avoid work stoppages in case of strikes, to provide different fringe benefits programs for nonunion employees, and to allow supervisory employees to participate in AS&I's profit–sharing plan. The salary of the manufacturing manager, the plant superintendents, and professional personnel in the production engineering and control departments are eventually paid by Williams and

EPMCO through charge–backs by AS&I. However, AS&I absorbs the cost of the salaries of purchasing department employees.

AS&I purchases the materials used in manufacture by EPMCO and Williams. AS&I has a national reputation which supports an excellent credit rating not attainable by its subsidiaries. There was testimony that this favorable credit, and the advantages of purchasing in bulk for one company, as an economic matter dictated purchasing through AS&I. The cost of materials is not charged back against EPMCO and Williams.

AS&I, the only taxpayer appealing in this suit, contends that it should be considered only as a retailer and that its subsidiaries EPMCO and Williams should be considered manufacturers for the purposes of assessing business and occupation taxes. Taxes were originally paid by the three companies on this basis. As a result of an audit by the Department of Revenue, AS&I was assessed $76,900.32 in additional taxes for the period January 1, 1969, through September 30, 1973, because the Department considered AS&I to be a "manufacturer" and its subsidiaries to be "processors for hire". Because the subsidiaries' tax burden is lessened by this characterization, the additional tax actually due from the three companies considered together is a little over $26,000.

The differing tax consequences of these characterizations arise from the different measure of the tax bases for retailers, manufacturers, and processors for hire.

Under RCW 82.04.240, a manufacturer's tax base is "the value of the products . . . manufactured regardless of the place of sale or of the fact that deliveries may be made to points outside the state." A processor for hire's tax is based on the gross income received for services performed, including specifically labor costs and overhead. RCW 82.04.280, .080. Thus, as a practical matter, under the State's analysis, AS&I pays tax on the total value of all goods fabricated for it by Williams and EPMCO. This

amount also reflects the labor and overhead costs that are subject to business and occupation tax as part of the income received for the services of the subsidiaries.

AS&I is also taxed as a retailer of goods within the state under the State's characterization. RCW 82.04.250, .440. However, the tax rate for retailers and manufacturers is identical, RCW 82.04.240, .250; and AS&I is exempted from taxation as a manufacturer with regard to those goods for which it has paid the retailer's business and occupation tax. RCW 82.04.440. Thus, the result is that AS&I pays business and occupation tax based on the value of all products manufactured, just as if it were simply being taxed as a manufacturer.

The favorable tax consequences for the taxpayer when it is considered only as a retailer arise from the fact that AS&I sells many displays out of state. Characterized only as a retailer, AS&I's tax base is limited to business transacted within the state. RCW 82.04.250. The "value of products" is the tax base only for subsidiaries which are classified as manufacturers. RCW 82.04.240. Williams and EPMCO pay higher taxes than they would on the value of their services as processors for hire, but the tax burden of the three companies, considered together, is less because no tax is assessed on the value of products sold out of state by AS&I.

The determinative issue, then, is whether AS&I or its subsidiaries should be characterized as a manufacturer for purposes of the business and occupation tax.

## II

A manufacturer is a "person who, either directly or by contracting with others for the necessary labor or mechanical services, manufactures for sale or for commercial or industrial use from his own materials or ingredients any articles, substances or commodities." RCW 82.04.110; WAC 458–20–136. Essential to classification as a manufacturer, then, is (1) ownership of materials and (2) fabrication of

goods from those materials, either through (a) the manufacturer's own labor or (b) the labor of one contracted for that purpose by the manufacturer.

## A
### OWNERSHIP OF MATERIALS

■ The first criterion, ownership of materials, is fulfilled by the fact that goods are ordered, paid for, and delivered in the name of AS&I by members of a purchasing department employed, housed, and paid by AS&I. Williams and EPMCO are not charged and do not pay for the materials from which displays are fabricated; nothing in the accounting of any of the companies suggests that the raw materials used in fabrication are owned by any entity but AS&I. The salaries of purchasing department employees, unlike those of supervising personnel in production departments, are not charged back against Williams and EPMCO by AS&I. Thus, the materials seem to be "owned" by AS&I.

AS&I urges that the materials used in fabrication of the displays are actually purchased by Williams and EPMCO through purchasing department employees "loaned" by AS&I to its subsidiaries and controlled by production supervisory personnel.

For instance, the manufacturing manager is one of those employees paid by AS&I whose salary is charged back against Williams and EPMCO. The manufacturing manager has control over the supervisor of the purchasing department and ultimately controls inventory and thus purchasing. AS&I contends that, since the manufacturing manager performs his task for and is ultimately paid from funds on the books of Williams and EPMCO, the purchasing department when acting under his indirect supervision must be acting as agent for those subsidiaries in purchasing materials.

AS&I further contends that when its purchasing department employees are considered "loaned servants" of its subsidiaries in making material purchases, then WAC 458-20-136 provides that the subsidiaries are to be considered

manufacturers because they purchase for AS&I's account with suppliers:

In cases where the person furnishing the labor and mechanical services supplies, sells, or furnishes to the customer, or purchases for the account of the customer, before processing, 20% or more in value of the materials from which the finished product is made, the person furnishing the labor and mechanical services will be deemed to be the owner of the materials and taxable as a manufacturer.

Thus, AS&I argues that purchasing department employees act as agents of Williams and EPMCO, ultimately supervised by subsidiary–paid personnel and directed in their decisions by manufacturing needs of the subsidiaries. The taxpayer overcomes the fact that materials are ordered, accepted, and paid for in the name of AS&I by arguing that this constitutes purchase by the subsidiaries, through AS&I employees, "for the account of" AS&I, which for these purposes must analytically be considered a company different from that nominally employing purchasing personnel.

The "loaned servant" doctrine has been used in this state to create liability in a principal who attempts to avoid assessment of damages by alleging that the negligent actor, or the injured party, although acting solely under the direction of the principal, is paid and is thus nominally the employee of another entity. *Davis v. Early Constr. Co.,* 63 Wn.2d 252, 386 P.2d 958 (1963) (firm's liability to employee injured by acts of another worker allegedly loaned to the firm); *McHugh v. King County,* 14 Wn.2d 441, 128 P.2d 504 (1942) (whether operator of damaged equipment remained employee of equipment's owner or had been loaned to equipment's user); *Wiest v. Coal Creek R.R.,* 42 Wash. 176, 84 P. 725 (1906) (whether injured worker had cause against railroad to whom he was loaned by his nominal employer).

The significance of "permanent loan" of the sort envisioned by AS&I in this case has never been considered

in our prior decisions. AS&I cites no support for the analysis in this context. Even if there were precedent for such an interpretation, the issue is one of fact, *Davis v. Early Constr. Co., supra,* and the trial court holding correctly rests on a conclusion that the purchasing department employees were not loaned to AS&I's subsidiaries, but rather were acting on behalf of the parent in making material purchase decisions.

It does not inexorably follow from the fact that the salaries of production supervisory personnel are charged back against Williams and EPMCO that their indirect supervision of any activity automatically makes that activity a function, and the actors employees, of Williams and EPMCO rather than AS&I. For instance, the manufacturing manager's orders could be countermanded by the head of AS&I, who has ultimate control over purchasing and has no role as an employee of the subsidiaries in asserting that control. AS&I at all times has ultimate control over the funds and actions of all three companies.

In fact, AS&I, as sole shareholder of the subsidiaries, exercised iron control over Williams and EPMCO and over their relationship to the parent as fabricator of its products. In order for the loaned servant doctrine to apply, the borrower must have exclusive control over the employee. *Davis v. Early Constr. Co., supra* at 258; *Walter v. Everett School Dist. 24,* 195 Wash. 45, 50, 79 P.2d 689 (1938). Because AS&I always retains the power to direct the actions of its own employees and of the subsidiaries themselves, Williams and EPMCO could not have exercised the exclusive control necessary to application of the loaned servant doctrine. The supervisory personnel owed their loyalties to the parent corporation; they looked to AS&I for their salaries and fringe benefits, including a profit–sharing plan. *See* RCW 49.64 (profit–sharing trusts available only for employees of company offering the profit–sharing plan benefits). The loaned servant doctrine does not support AS&I's characterization of its taxpaying status.

Williams and EPMCO are not charged or responsible for materials used in fabrication. Materials are purchased by AS&I employees on AS&I credit. Supervisory manufacturing personnel carry AS&I titles. The trial court's findings, which implicitly reject the "loaned servant" analysis, can be supported by this evidence, and we hold that AS&I owned the materials used in manufacture of display signs for purposes of determining its taxpaying status.

## B
### FABRICATION OF GOODS

■ Having established that AS&I, and not its subsidiaries, "own" fabrication materials, the second criterion, fabrication of goods, is fulfilled by AS&I's arrangement with its subsidiaries for construction of the displays.

Williams and EPMCO are characterized as "processors for hire." The term "processing for hire" is used in RCW 82.04.280, which establishes the tax, but it is only explicitly defined in WAC 458–20–136:

> The term "processing for hire" means the performance of labor and mechanical services upon materials belonging to others . . . Thus, a processor for hire is any person who would be a manufacturer if he were performing the labor and mechanical services upon his own materials.

Williams and EPMCO, whose employees do the actual fabrication of the displays, are processors for hire because the materials used belong to AS&I rather than to those two subsidiaries. RCW 82.04.280; WAC 458–20–136. AS&I is a manufacturer that fabricates goods by contracting with others. RCW 82.04.110; WAC 458–20–136.

## III

The State's classification of the taxpayer as a manufacturer is thus shown to be correct. The Department of Revenue's characterizations are further bolstered by other provisions of WAC 458–20–136:

> 2. If the person furnishing the labor and mechanical services furnishes materials constituting less than 20% of the value of all of the materials which become a part of

the finished product, such person will be presumed to be processing for hire. *The person for whom the work is performed is the manufacturer* in that situation, and will be taxable as such.

(Italics ours.)

Since Williams and EPMCO are furnishing none of the materials used in fabrication, and since they are performing the work for AS&I, which furnishes all of the materials, AS&I is properly classified and taxed as a manufacturer. RCW 82.04.110; WAC 458-20-136. Williams and EPMCO are not manufacturers because they do not own the materials from which the goods forming the tax base are manufactured. RCW 82.04.110; WAC 458-20-136. Their functions are precisely those contemplated by the "processing for hire" taxpayer status—fabrication of goods from another's raw materials. RCW 82.04.280; WAC 458-20-136.

The Department of Revenue correctly characterized the taxpayer AS&I as a manufacturer and its subsidiaries Williams and EPMCO as processors for hire. We therefore affirm the trial court's denial of the taxpayer's claim for relief.

ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, and HICKS, JJ., and HAMILTON and RYAN, JJ. Pro Tem., concur.